Sidney MILLNER, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 83–1288.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1983.

Decided Jan. 12, 1984.

William L. Botts, III, Rappahannock Legal Services, Fredericksburg, Va., for appellant.

David Hyman, Dept. of Health and Human Services, Philadelphia, Pa. (Diane C. Moskal, Regional Atty., Charlotte Hardnett, Asst. Regional Atty., Dept. of Health and Human Services, Philadelphia, Pa., Elsie L. Munsell, U.S. Atty., Debra J. Prillaman, Asst. U.S. Atty., Richmond, Va., on brief), for appellee.

Before MURNAGHAN and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

Sidney Millner appeals from a judgment of the United States District Court for the Eastern District of Virginia, which affirmed a final decision of the Secretary of Health and Human Services denying Millner's application for social security disability insurance benefits.

I

Mr. Millner filed concurrent applications for social security disability and Supplemental Security Income (SSI) benefits on January 23, 1981. His claims were initially denied and upon reconsideration only his SSI claim was approved. At the claimant's request, a hearing de novo was held before an administrative law judge (ALJ) with respect to the denial of social security disability benefits.

Sidney Millner was born on May 7, 1931. He never went to school and never received any other formal education or training. He is unable to read and can only write his own name.

Millner was employed by the Ford Motor Company for 20 years. His job at Ford entailed heavy work involving lifting of 100 pounds or more, constant bending, reaching, walking, and standing for most of an eight hour day. From 1968 until 1979 he worked intermittently as an auto mechanic for Thomas C. Bourne, a Chrysler-Plymouth dealer in Ashland, Virginia. Millner first left Bourne for a period in 1972 or 1973 due to "back problems" and again in 1975 or 1976. He returned to Bourne in March 1979 but quit on November 22, 1979, because of chest pains.

Millner suffered from frequently occurring chest pain, back pain, and rectal bleeding. He first sought medical treatment from Dr. Cecilio Albo, a general practitioner, in April 1978. Albo sent Millner to Dr. Robert B. Vranian, a cardiologist, in April 1979, for advice about Millner's chest pains. Vranian suggested that Millner undergo tests to pinpoint his condition. Millner did not follow the suggestion because he could not afford the tests.

On December 14, 1980, Millner was admitted to the Mary Washington Hospital, Fredericksburg, Virginia. He complained of extreme chest pain. Tests revealed that he had suffered a diaphragmatic wall infarction (i.e., heart attack). Millner was discharged on December 23, 1980.

On March 11, 1981, Millner was admitted to the Medical College of Virginia Hospital, Richmond, Virginia. He again complained of extreme chest pains. It was determined on the basis of a cardiac catherization that Millner had "diffuse three-vessel coronary disease." Millner's condition was con-

sidered to be inoperable. On March 18, 1981, while Millner was still in the hospital, he suffered an arteriolateral infarction (i.e., heart attack). He was dismissed from the hospital on April 10, 1981.

Millner and Rebecca Jolly, his common law wife, both testified before the ALJ that, since 1979, he had felt chest pains whenever he exerted himself. For instance, Millner stated that he couldn't even change the oil in his car; Jolly testified that he had chest pains and rectal bleeding after trying to mow the lawn.

The ALJ had reports on Millner's health from eight doctors. Five of the reports were from doctors who had examined Millner after his December 1980 heart attack.[1] All of the reports concluded that Millner *probably* was disabled before June 30, 1980.[2] Three of the reports were from doctors who had examined Millner before his December 1980 heart attack.[3] The three doctors indicated that Millner was unable to perform the job of auto mechanic. Albo's only comment about Millner's cardiac problems was that he felt Millner's hypertension could be treated with medication. Both Staples and Vranian felt that Millner was suffering from angina and that further tests were necessary exactly to diagnose his various ailments.[4] None of the doctors said how Millner's heart problems affected his ability to do physical work other than heavy work such as auto repair.

A Social Security medical advisor did submit a report that said Millner could "frequently lift and carry objects weighing 10 pounds." The report of the Social Security medical advisor, written by a non-examining, non-treating physician, is the only evidence which directly speaks to the issue of Millner's ability to do physical work.

Based on the above evidence, the ALJ found that Millner met the Social Security

---

1. Those reports were from Doctors Ann Grady, Phillip Linas, Susan E. Meetz, A. Jarrell Raper, and Jerry A. Trice.

2. The last date Millner met the special earnings requirements for insured status under the social security disability program. *See* 42 U.S.C. § 416(i)(3).

3. The reports were from Doctors Cecilio Albo, Ted C. Staples, and Robert B. Vranian.

4. The tests were never performed. Millner claims he could not afford them.

Act's special earnings requirements up to June 30, 1980, but that he was not totally disabled before that date. The ALJ found that Millner was unable to perform his past relevant work as an automobile mechanic because of the heavy lifting required. The ALJ then found that Millner could perform "light work," was a "younger individual," [5] had no formal education, was illiterate, and had no transferable work skills. Consequently, the ALJ applied the Secretary's Medical-Vocational Guidelines to arrive at the conclusion that Mr. Millner was not disabled. See 20 C.F.R. part 404, subpart P, appendix 2, Rule 202.16 (1983).

The Secretary's Appeals Council denied Mr. Millner's request for review and the ALJ's decision became the Secretary's final determination. Millner then sought judicial review. His case was referred to a United States Magistrate. The Magistrate issued a proposed opinion granting summary judgment to the Secretary. The proposed opinion concluded that there was substantial evidence to support the Secretary's finding that Millner was not disabled. The district court accepted the Magistrate's proposed opinion and entered summary judgment for the Secretary. An appeal followed.

## II

The ALJ had found that Millner's medical condition prevented him from returning to his past relevant work, but that he was capable of light work. That finding, in combination with Millner's age, education and work experience, was plugged into the grid and the grid dictated an ultimate finding that Millner was not disabled.

■ To establish the existence of substantial evidence to support the ALJ's decision it is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided one such witness gave sufficient probative evidence. However, there is no evidence in the record that directly supports a finding that Millner could do light work other than the opinion of a Social Security medical advisor, who was a non-examining, non-treating physician. A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record. See Hall v. Harris, 658 F.2d 260, 265–66 (4th Cir.1981); Hayes v. Gardner, 376 F.2d 517, 521 (4th Cir.1967).

■ Millner testified that, since 1979, he had chest pains whenever he exerted himself. His inescapably self-serving testimony is nevertheless not refuted, but rather is fully supported by the medical evidence. Dr. Albo, who had been treating Millner for chest pains since April 1978, felt that Millner's condition required specialized diagnosis. Dr. Vranian, a cardiologist, examined Millner in 1979 and determined that Millner may have had asymptomatic coronary artery disease. Vranian suggested that Millner have further tests, but Millner did not undergo them because of their cost.[6] Millner was seen by Dr. Staples, an internist, in 1980. Staples also decided that Millner might be disabled by his cardiac condition but that further tests were necessary. Millner did not receive any further medical attention until his December 1980 and March 1981 heart attacks. The record contains reports from five doctors who had not examined Millner before his first heart attack. All of them concluded that Millner probably was disabled by his heart condition before June 1980. In some instances the conclusions were largely based on Millner's symptoms as he recounted them. However, some of the doctors came to their conclusions independently of Millner's self-serving statements. For instance, Dr. Raper based his feeling that Millner was disabled before

---

5. Millner was 49 years, 1 month, 23 days old on the last date he met the special earnings requirements. The Secretary's regulations define as a younger individual all persons under fifty years of age. See 20 C.F.R. 404.1563(b) (1983).

6. The Secretary's regulations provide that a person will be found not disabled if he refuses to follow prescribed treatment without good reason. 20 C.F.R. § 404.1530(b). We have recently held, however, that inability to pay for treatment is good reason. Gordon v. Schweiker, 725 F.2d 231 (4th Cir.1984).

June 30, 1980, on the state of his vessels in March 1981. A treating physician's diagnosis of claimant's condition may be made after the relevant determination date and is entitled to significant weight if it is based on objective medical criteria. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir.1983); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.1981); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir.1974).

■ Since the only report in the record purporting to support the ALJ's finding that Millner was capable of light work is that of a non-examining, non-treating physician[7] and that report is contradicted by direct testimony by the claimant and by medical diagnoses made by examining and treating physicians, a finding based on so slender a reed was simply not supported by substantial evidence. Without the finding, the Secretary's ultimate conclusion that Millner was not disabled lacks any evidentiary support. A person with Millner's age, educational and skill qualifications is deemed disabled by the grid if he is only capable of sedentary work, the exertional category below light work. 20 C.F.R. part 404, subpart P, appendix 2, Rule 201.17 (1983).

Millner made a *prima facie* showing of disability when he supplied evidence that proved he was incapable of performing his past relevant work on the last date of his insured status. The Secretary did not then meet the burden of showing that Millner was not disabled. Therefore, the ALJ should have found that Millner was disabled within the meaning of the Social Security Act. *See Higginbotham v. Califano*, 617 F.2d 1058, 1059 (4th Cir.1980).

We reverse the judgment of the district court and remand with instructions that an order should be entered awarding disability benefits to the claimant.

REVERSED AND REMANDED.

---

7. When Millner was admitted to Mary Washington Hospital in December 1980 he was described by Dr. Trice as a "semi-employed" mechanic. The Secretary points to that description as proof that Millner was capable of light work until after his insured status expired. Dr. Trice later explained that he did not pinpoint exactly what type of work Millner was doing and that the description meant nothing more than that Millner was not then working full time. The ALJ did not mention Dr. Trice's description or its refutation in his decision. Dr. Trice's description of Millner as "semi-employed" in a document concerned with physical state or condition prepared purely for medical purposes, considered as a whole, is altogether inconclusive and does not amount to respectable evidence that Millner was employed, part time or otherwise, in December 1980.