**Demaris P. HOOPER, Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 84–1200.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1984.

Decided Jan. 7, 1985.

S. Jackson Kimball, Rock Hill, S.C. (Kimball & Perrill, Rock Hill, S.C., on brief), for appellant.

Paula L. Kocher, Asst. Regional Atty., Dept. of Health and Human Services, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Louis Defalaise, U.S. Atty., Lexington, Ky., Carl H. Harper, Regional Atty., Elyse S. Sharfman,

Supervisory Atty., Atlanta, Ga., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Demaris P. Hooper appeals from an order of the district court affirming the Secretary's denial of her claim for disability insurance benefits and Supplemental Security Income. We reverse.

## I.

Hooper was born on October 30, 1932, and was forty-nine years old at the time of her most recent administrative hearing on April 27, 1982. She has a sixth-grade education. Hooper worked as a twister operator in the textile industry for twenty-four years, until the plant doctor told her that she should quit. She last worked on May 30, 1974, and alleges inability to work because of high blood pressure, diabetes, bursitis,[1] and nervousness.

The medical evidence reveals that Dr. James C. Holler, Jr., has been treating Hooper since May, 1970, for mild hypertension, excessive obesity, and severe anxiety depressive states. In 1974, Hooper developed pain in her left leg and heel. Dr. Holler diagnosed bursitis of the left heel and began treating it. He also advised Hooper to have her leg operated on for varicose veins, which was done in June, 1974. While she was hospitalized, Hooper's bursitis in the left heel was noted to be only slightly improved. When Hooper continued to suffer from "bursitis all over" after having had surgery, Dr. Holler thought that her primary trouble was anxiety depression and placed her on medi-

cation. Dr. Holler continued to see Hooper on numerous occasions in 1974. Dr. Holler reported that Hooper was very nervous and complained of persistent pains in her elbows, knees, back, left leg, and left heel. At Dr. Holler's suggestion, Hooper took a personal leave of absence from work.

During 1974, Hooper was also seen by an orthopedic surgeon for her complaints of back pain. Upon examination, he found muscle spasm and limited motion in Hooper's lower back. X-rays revealed an anomalous facet joint of L5–S1 on the left side. The doctor prescribed pain medication. Because Hooper was also having heel pain, he ordered heel cups for her. The surgeon opined that Hooper's main problem was anxiety with muscle spasm, and he dismissed her from further treatment.

On May 22, 1975, Dr. Holler again examined Hooper. His physical examination revealed "an obese woman who is right apprehensive." Dr. Holler concluded that Hooper was not able to return to her former work because, in his opinion, she would be unable to continue doing the amount of physical work required by that job.

A medical consultant for the Secretary telephoned Dr. Holler on September 17, 1975. According to the consultant's report, Dr. Holler stated that Hooper's range of motion was still quite good and that her primary problem continued to be the fact that she ought to lose weight. The report also indicates that Dr. Holler said that Hooper still complained of joint pain and that she continued to be essentially the same. The report is not signed by Dr. Holler.[2]

On September 10, 1976, Hooper's claim for disability insurance benefits and supplemental security income first came on for hearing before an administrative law judge

---

1. Bursitis is the inflammation of a pouch composed of a thin layer of tissue, filled with viscous fluid, and situated at places in tissues where friction would otherwise develop, such as at the elbow, heel, knee, and shoulder. 1 A.R. Gray, *Attorney's Textbook of Medicine* § 7A.70 (3d ed. 1984); *Dorland's Illustrated Medical Dictionary* 235–39 (25th ed. 1974).

2. The unsigned report of Dr. Holler's conversation was admitted into evidence without objection. We note, however, that the Secretary's practice of obtaining such evidence is of questionable propriety.

("ALJ"). Hooper testified she had severe pain in her left side, left leg, lower back, around the heart, and left arm. She described the pain as sharp and said that there was pressure on the back of her leg and on the bottom of her heel. According to Hooper, her left leg and foot swell when she stands and she cannot stand long enough to wash dishes or to cook a meal without experiencing pain. She stated that she was in constant pain and that the pain was not relieved by sitting down. She maintained she was unable to sit or stand for an hour at a time and had difficulty in walking even one-half block. Hooper testified that her left leg had gotten worse since her vein surgery and that her arm also develops a numb feeling. She stated that her diabetes causes her to have weak spells and has affected her eyesight and that she hardly has any hearing in her right ear. She further testified she takes medication for pain, muscle spasm, diabetes, bursitis, arthritis, tension, digestion, and a skin condition. She reported that the pain pills help relieve her pain somewhat and that if she did not take her pain medication she would become nervous. Hooper's complaints of pain were corroborated by a former co-worker and her daughter.

Following the hearing, the ALJ obtained additional medical evidence. At the request of the South Carolina Vocational Rehabilitation Department, Dr. William Gregory, an orthopedic surgeon, examined Hooper on December 7, 1976, to determine whether Hooper's complaint of lumbar pain was consistent with physical findings. He reported that x-rays showed mild degenerative changes throughout in the cervical and lumbar spines with a transitional vertebra between L5 to the sacrum and a rotational deformity at approximately L3. Dr. Gregory stated that Hooper's congenital defects in the lumbar spine did cause some pain.

Dr. Henry S. Ritchie, a psychiatrist, saw Hooper in his office at the request of a disability examiner on November 29, and December 11, 1976. His mental status examination revealed a flat, mildly depressed, moderately anxious female. Dr. Ritchie characterized Hooper as a near inadequate individual with low motivation, marked dependency, and passivity. He also completed a residual functional capacity questionnaire, finding that Hooper was mildly impaired with regard to her ability to relate to other people, restriction of daily activities, and constriction of interests. Dr. Ritchie concluded that she was also mildly impaired in her ability to perform work requiring frequent contact with others and to perform complex tasks. He rated Hooper's limitation in performing varied tasks as moderate. His diagnostic impression was chronic mild to moderate anxiety neurosis with depressive features in a passive aggressive personality, passive, dependent type. Dr. Ritchie's prognosis was "guarded."

After considering the additional medical evidence, the ALJ rendered a determination adverse to Hooper. The Appeals Council approved that determination, and Hooper appealed to the district court. Based upon certain improper hypothetical questions by the ALJ, the district court remanded the case to the Secretary for further consideration. *Hooper v. Califano*, No. 77–1687 (D.S.C. July 17, 1979).

Pursuant to the court's remand, a supplemental hearing was held on April 2, 1980, and additional exhibits were submitted. In a report dated March 25, 1980, Dr. Holler wrote that he continued to see Hooper three or four times per year. A letter dated April 29, 1980, from Dr. Holler's clinic, however, documented that Hooper had been seen by doctors in the clinic six times in 1977, eight times in 1978, five times in 1979, and two times in 1980. Dr. Holler reported that Hooper complained primarily of multiple joint pain and discomfort and was overweight. In Dr. Holler's opinion, Hooper was unable to work. He stated that her biggest problems, other than obesity, were chronic severe anxiety and chemical diabetes. Dr. Holler believed that the claimant's diabetes would be adequately controlled if she followed dietary instructions.

On March 26, 1980, Dr. James O. Merritt gave Hooper a psychiatric examination at her attorney's request. He remarked that she appeared mildly depressed and somewhat anxious. His diagnosis was depressive neurosis. He felt that Hooper had been unable to sustain gainful employment because of her combination of physical and mental impairments. He found that Hooper's ability to relate to other people and her ability to perform simple tasks were moderately impaired. He concluded that her degree of deterioration in personal habits and degree of constriction of interests were also moderate. He considered her degree of restriction of daily activities, ability to perform work requiring frequent or minimal contact with others, and her ability to perform complex tasks, repetitive tasks, and varied tasks to be moderately severe. He concluded that because Hooper's symptoms were long-standing and had not changed essentially, except to deteriorate in some respects, the degree of impairment would either stay the same or become worse.

The supplemental hearing again resulted in an adverse determination by the ALJ. The Appeals Council approved that determination, and Hooper appealed. On September 30, 1981, the district court found that because Hooper's impairments prevented her from returning to her former employment, she had established a *prima facie* case of disability. The district court also found that the Secretary's conclusion that Hooper could perform sedentary work suffered from a number of flaws. The district court reasoned that the Secretary had failed to accord proper consideration to the uncontradicted opinion of Hooper's treating physician, Dr. Holler. In addition, the district court concluded that the reports of Dr. Holler and Dr. Merritt, a consulting psychiatrist, along with the testimony of the claimant, constituted a *prima facie* case of mental disability, which the Secretary had not properly rebutted. Accordingly, the district court remanded the case a

second time. *Hooper v. Schweiker*, No. 77–1687 (D.S.C. Sept. 30, 1981).

On April 27, 1982, a third hearing was held, and three additional reports were submitted. On February 15, 1982, Dr. Holler wrote that Hooper's general condition had not changed substantially in the last several years and that she continued to complain of chronic anxieties and chronic pains in her legs, back, and neck. He remained firm in his opinion that Hooper was unable to perform her former work. He concluded that Hooper's arthritic symptoms and anxiety would not tolerate physical labor, and that her overall education and training would not permit her employment in any job other than manual type labor.

A psychological evaluation was performed by Dr. James K. Phillips, III, on February 23, 1982. Hooper's test results indicated that she functioned in the average range of intelligence and had a profile similar to individuals who are often found to be highly sensitive to a multitude of physical complaints, who have limited insight into dynamics surrounding the complaints, and who very typically tend to be involved in depressive symptomatology which relates to the physical symptoms. Dr. Phillips' diagnostic impression was dysthymic disorder.[3]

Dr. David B. Palmer, IV, a psychiatrist, saw Hooper on three occasions in February and March, 1982. He said she displayed slightly flattened affect and looked a little depressed. He completed a questionnaire pertaining to Hooper's residual functional capacity, indicating that Hooper was mildly impaired with regard to her ability to relate to other people, her degree of restriction of daily activities, her ability to perform work requiring frequent contact with others, and her ability to perform repetitive tasks. He opined that Hooper was moderately restricted from performing complex and varied tasks. Dr. Palmer commented that in determining Hooper's prognosis for work,

---

3. "Dysthymic disorder" means disturbed mood and encompasses either depression or manic episodes. Tr. 424–25.

more important than his answers to the questionnaire, was the fact that Hooper felt unable to work and had not worked for many years. Dr. Palmer diagnosed (1) dependent personality disorder with symptoms of anxiety and depression, and (2) somatization disorder.[4]

At the third hearing, Dr. William Douglas Holbrook, a psychiatrist, testified as a medical advisor. Dr. Holbrook reviewed the findings of the three psychiatrists, Drs. Ritchie, Merritt, and Palmer, and concluded that their reports, when considered together, were not contradictory and reflected a finding of mild to moderate restrictions due to Hooper's mental condition. He stated that the report of the psychologist, Dr. Phillips, did not change his evaluation of the psychiatrists' reports. Dr. Holbrook further testified that Dr. Holler's findings and reports were essentially consistent with what the examining psychiatrists had found. He explained that because of the psychiatric findings Hooper would have greater difficulty losing weight than the average person. Finally, Dr. Holbrook unequivocally testified that Hooper could not perform adequately where she would be surrounded by people, noise, and machinery, and where she would be required to concentrate on details, pay attention to tasks consistently, meet production quotas and perform repetitive work in a fairly stressful environment.

Dr. Benson Hecker, a vocational expert ("VE"), also testified at claimant's third hearing. He stated that assuming no impairments, Hooper was only a "fair" employment prospect or in the lower twenty-five percent on a scale of employable persons. Dr. Hecker said that, assuming the psychological impairments set forth in Dr. Ritchie's report, Hooper was reduced to a "poor" employment prospect, having no chance. He further testified that the only jobs Hooper could physically perform are found in an environment in which she could not function based upon Dr. Holbrook's evaluation of her psychological impairment.

The third hearing again resulted in an adverse determination by the ALJ. Notwithstanding the district court's earlier order to the contrary that the reports of Drs. Holler and Merritt, along with the testimony of Hooper, constituted a *prima facie* case of mental disability, the ALJ concluded that "a *prima facie* case of disability due to mental impairment really has not been made." The ALJ then found that Hooper could perform sedentary work and denied benefits.

The district court upheld the Secretary's final decision. In his final order, the district judge stated that Hooper had established a *prima facie* case of disability and reasoned that the Secretary had rebutted claimant's *prima facie* case. Hooper appeals.

## II.

On appeal, Hooper contends that the district court erred in affirming the Secretary's decision finding that there was no *prima facie* case of disability to be rebutted, when the district court specifically concluded that a *prima facie* case of disability had been established. Hooper further contends that the Secretary failed to rebut her *prima facie* case because the rebuttal testimony of Drs. Holbrook and Hecker demonstrate conclusively that Hooper's mental impairment prevents her from performing the work which she is physically qualified to do. Finally, Hooper contends that the district court erred in affirming the Secretary's decision, which is based upon use of the medical-vocational guidelines (the "grids") in a case where the claim of disability involves primarily non-exertional impairments. We agree with all three of Hooper's contentions.

In its remand order of September 30, 1981, the district court expressly held that Hooper had advanced a *prima facie* case of disability and directed the Secretary to rebut this *prima facie* case. On remand, the ALJ disregarded the court's mandate

4. "Somatization," in psychiatry, means the conversion of mental experiences or states into bodily symptoms. *Dorland's Illustrated Medical Dictionary* 1438 (25th ed. 1974).

and "conclude[d] a *prima facie* case of disability due to mental impairment really ha[d] not been made." This was error. *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir.1967).

■ The district court's holding that Hooper had advanced a *prima facie* case was final and not subject to review by the Secretary. 42 U.S.C. § 405(g). If the Secretary was dissatisfied with any part of the district court's order, the remedy was to appeal the case and not, under the guise of a hearing, to relitigate a question already finally decided by the district court.

On remand, the only issue before the ALJ was whether the Secretary could rebut Hooper's *prima facie* case and show that she had sufficient residual functional capacity to perform an alternative job. We conclude that there is not substantial evidence in the record which either contradicts or rebuts the *prima facie* case.

■ The Secretary called Dr. Holbrook, a psychiatrist, and Dr. Hecker, a VE, for the purpose of rebutting Hooper's *prima facie* case. Dr. Holbrook, the consulting psychiatrist, testified that the diagnoses of the three psychiatrists were not contradictory. He stated that the report of the psychologist did not change his opinion. Dr. Holbrook correctly recognized that the opinion of claimant's treating physician, based upon continuing observation over more than ten years, was entitled to great weight. Dr. Holbrook observed that the reports of Dr. Holler were essentially consistent with those of the three psychiatrists. Dr. Holbrook agreed that Hooper was unable to perform adequately in a stressful environment surrounded by noise, people, and machinery. Thus, the only new medical evidence submitted by the Secretary on remand is not inconsistent with the opinions of Drs. Merritt and Holler, which were already in the record. Accordingly, the Secretary has failed to rebut Hooper's *prima facie* case. Because there is substantial medical evidence in the record that Hooper is disabled as a result of her physical and mental impairments, we hold that a finding of disability is required under the district court's September 30, 1981, order.

■ In addition, we agree with Hooper that, despite the Secretary's protestations to the contrary, the Secretary relied on the grids to direct a finding of no disability. Because the grids do not automatically apply when a non-exertional impairment exists, the testimony of a VE is normally required. *McLain v. Schweiker*, 715 F.2d 866, 870 n. 1 (4th Cir.1983).

Dr. Hecker assumed that claimant was restricted from low back motions and would have to alternate between sitting and standing, and further assumed that she had a mild to moderate mental impairment. Assuming, in addition to these factors, that claimant experienced moderate pain relieved by medication affecting her concentration, Dr. Hecker testified that Hooper would be unable to work. He repeated Dr. Holbrook's conclusion that Hooper could not work a forty- to forty-eight hour week, in surroundings described as noisy, with many people and machines, where she would have to concentrate on details and generally work in a stressful environment. The Secretary offered no evidence to refute Hooper's degree of pain, the effect of her pain medication, or the effect of medication on her nervous condition. Thus, the Secretary could only have reached a finding of not disabled in this case by concluding that the grids directed such a result. The district court, therefore, erred in affirming the decision of the Secretary, to the extent it was based upon the grids, where the claim of disability involved primarily non-exertional impairments.

### III.

For the foregoing reasons, the judgment of the district court is reversed and this case is remanded with directions to award benefits to Hooper.

REVERSED AND REMANDED WITH DIRECTIONS.