Pansy DARNELL on Behalf of Jimmy DARNELL, Plaintiff,

v.

Otis R. BOWEN Secretary of Health and Human Services, Defendant.

Civ. A. No. 85–0021–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 28, 1986.

James M. Shull, Weber City, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Pansy Darnell on behalf of Jimmy Darnell (a minor), has filed this action challenging the final decision of the Secretary of Health and Human Services denying plaintiff's claim for supplemental security income (SSI) benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda submitted by the parties, the issues now before the court are whether the Secretary's final decision is supported by "substantial evidence," or whether there is "good cause" to necessitate remanding the case to the Secretary for further consideration. *See* 42 U.S.C. § 405(g).

In an opinion eventually adopted as the final decision of the Secretary, an Administrative Law Judge (ALJ) found that plaintiff was not under such a disability as to establish entitlement to benefits under the Act. While the ALJ found that Jimmy Darnell has mild mental retardation, he concluded that the impairment was not so severe, either singly or in combination with other alleged impairments, so as to constitute a disability within the meaning of the Act. 42 U.S.C. § 1382c(a)(3).

Subsequent to the filing of this § 405(g) appeal, plaintiff, by counsel, on October 17, 1985, filed new medical evidence in the form of a report bearing date of September 20, 1985, concerning psychological evaluation of plaintiff, Jimmy Darnell, by Carl McGraw, Ph.D., a clinical psychologist. Counsel for plaintiff, on November 7, 1985, filed an affidavit of "good cause" for failure to file the report at the administrative stage of this claim.[1] The court notes that this action was filed *in forma pauperis*, and that lack of financial means to secure the report earlier was the reason for not having introduced it at the administrative level. This court has long held that where a plaintiff in a § 405(g) appeal has been permitted to file *in forma pauperis* and is later able to obtain new and additional medical evidence "good cause" for remand exists if the new medical evidence is relevant to the issues in the case. The court, in this case, finds that the new medical evidence is relevant, because it indicates that on I.Q. testing Jimmy Darnell has a

---

1. In his affidavit, counsel for the plaintiff mistakenly referred to a medical report of Dr. Pierce Nelson, M.D., when the report was from Carl McGraw, Ph.D., a clinical psychologist, in Dr. Nelson's Office.

full scale I.Q. of 59, which would be conclusive evidence of a listed impairment under the Secretary's listing of (medical) impairments set out in 20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1, § 12.05(B).[2]

■ The court's review of the record in this case reveals that two agents of the Secretary, i.e., the ALJ and the Social Security Administration Representative (SSAR) under an experimental program called the Social Security Administration Representative Program[3] (SSARP), *see* 20 C.F.R. § 416.1465 *et seq,* failed to fully and fairly develop the medical evidence of this indigent SSI claimant. The Secretary's regulations require the ALJ and the SSAR to fully develop the evidence. *See* 20 C.F.R. § 404.944 for duty of the ALJ and § 416.1465(d)(1) for duty of the SSAR. This duty is more important and particularly pronounced in an SSI claim because of the indigency of the claimant. The record reflects that prior to the ALJ's hearing in this case there was evidence in the record indicating that the plaintiff had an I.Q. of 61. He was well within the threshold requirement for a listed impairment under § 12.05(C),[4] *Id.* The only additional requirement was that plaintiff have, in addition to an I.Q. of 60–69 inclusive, a physical or other mental impairment imposing additional and significant work-related limitation of function. *See Kennedy v. Heckler,* 739 F.2d 168 (4th Cir.1984). The court holds that upon an SSI claimant's showing that he meets the threshold requirement for a listed impairment under § 12.05(C),

*Id.,* the Secretary, acting through the ALJ or the SSAR, should have obtained consultative medical examinations, both psychiatric and physical, to determine if the claimant had a physical or other mental impairment imposing additional and significant work-related limitation of function. This the ALJ and the SSAR both failed to do. Instead of obtaining consultative examinations, the ALJ and the SSAR chose to rely on the opinion of a non-examining Disability Determination Services doctor. The opinion of a non-examining physician in a mental impairment case cannot be relied upon by the Secretary as "substantial evidence," and the court, therefore, finds that there is not "substantial evidence" to uphold the Secretary's final decision in Darnell's claim. *Cf. Millner v. Schweiker,* 725 F.2d 243 (4th Cir.1984) citing *Hall v. Harris,* 658 F.2d 260 (4th Cir.1981). (A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by other evidence in the record). There is no contradictory evidence in the case *sub judice,* because the SSAR and the ALJ totally failed in their duty to fully and fairly develop the evidence by obtaining consultative physical and psychiatric examinations for the indigent SSI claimant, and in so doing they defeated the intent of Congress in establishing the SSI Program. The ALJ also relied on a regulation concerning medical equivalence which requires that medical equivalence be determined by a physician designated by the Secretary. *See* 20 C.F.R.

---

2. 12.05 Mental retardation. As manifested by:
   A. ...
   B. IQ of 59 or less (see 12.00B4); or
   C. IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function.
   *See* 20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1.

3. An experimental program, the implementation of which began in October of 1982, pursuant to regulations adopted by notice of proposed rule making and final rule making. *See gen.,* F.R., Vol. 47, No. 101 (Thursday, August 19, 1982), Pg. 36117; *see also,* 45 F.R., 2345 (Jan. 11, 1980); and 45 F.R. 47162 (July 14, 1980). The supplementary information in the final rule

making stated, *inter alia:* [that] the new regulations merely enable us to undertake a small project to test the effects of SSA representation in the hearing process. The regulations thus *effect only a temporary modification* in hearing procedures in a small number of hearing offices. *See* 47 F.R. 36117.

The Program was advertised in the F.R. as an anticipated one-year experimental program. It has now been under implementation in the Kingsport, Tennessee Office for some three years and five months. Long years of observance of the bureaucracy leads us to believe that there is nothing more permanent than a temporary bureaucratic government program.

4. See FN 2, *supra.*

§ 404.1526. This section is contrary to the Social Security Act, and upon remand the Secretary shall not rely on same to make a determination of disability or to determine whether plaintiff has a listed impairment or the equivalence of a listed impairment under App. 1. *Id.* The failure of the SSAR to develop that portion of the evidentiary gaps on the record by development that would be favorable to the claimant is one of the glaring weaknesses that this court has observed in the SSARP. Instead of developing the case, the SSAR chose not to develop the case for the apparent reason that it was in the posture that he as the representative of the Secretary would prefer in order that benefits could be denied.[5] The SSAR in his pre-hearing motion containing his statement of position in position seven stated: "If the claimant has the capacity to perform a restricted range of medium, light and sedentary work, using Rules 203.25, 202.17 and 201.24 as a framework, the job base would not be significantly narrowed due to claimant's exertional and nonexertional limitations." Tr. 20. This position points up the fallacy and complete unfairness of the SSAR's actions in developing (or failing to develop) the case. If there is no medical evidence as to impairments which restrict medium, light or sedentary work, how could an ALJ make a finding as to residual functional capacity without pulling same out of the thin air; and if there is no additional psychiatric evidence, how could an ALJ determine that Darnell's non-exertional impairments would not significantly narrow his work base except to pull same out of thin air? In short, the SSAR instead of developing the evidence for hearing in Darnell's claim, totally failed in his duty so to do to the benefit of his client, the Secretary, and to the detriment of the indigent SSI claimant. Such disregard for the purpose of the SSI Program and the purported intent of the SSARP borders on outrage. The SSAR

magnanimously offered to consider additional evidence in this manner: "By copy of this motion and statement, and copy of a list of proposed exhibits presently of record, we are advising the claimant's appointed representative of our current position in this matter. *If additional impairments exist, or additional evidence exists which may warrant a change in our present position,* we would appreciate the opportunity to consider such evidence as soon as possible and at least 10 days prior to the scheduled hearing date. Furthermore, we invite an informal conference with the claimant's representative in person or by telephone for the purpose of reaching stipulations on uncontroverted facts. *We are not aware of the existence of any additional relevant evidence.*" Tr. 21; emphasis added. In so doing, he attempted to shift the burden of developing the case from himself, where the Secretary placed same by the SSARP regulations, to the indigent SSI claimant. Such is an affront to the Secretary's SSARP and to fair treatment for an SSI claimant.

This case is illustrative of one of the many problems that this court has perceived since the inception of the SSARP. Under the notice of proposed rule making and the final rule making[6] by the Secretary in the adoption of the SSARP regulations it was represented that the SSAR's would be non-adversary. It has become manifestly apparent to this court that the SSAR's in practice have been almost totally adversative, and that their pre-hearing development of claims has been one-sided development in favor of the Secretary in disregard of their duty to *fairly* and fully develop the claim not only for the Secretary but also for the claimant. This case just represents one bad example among dozens of others that the court has observed since the inception of the Program

5. Without medical evidence of a physical or other mental impairment imposing additional and significant work-related limitation of function and by his being able to place total reliance on a non-examining Disability Determination Services doctor's opinion, the SSAR made it impossible for the indigent plaintiff to prove a listed 12.05(C) impairment without additional development to obtain additional evidence.

6. See FN 3, *supra.*

in October of 1982,[7] at the Kingsport, Tennessee Office of Hearings and Appeals. The court cannot help but observe that if the experimental program cannot be fairly administered and if the SSAR's cannot act in a non-adversary manner in developing pending claims for hearing, the Secretary should consider abandoning this cumbersome, expensive and unfairly administered experimental program.

■ The court finds "good cause" for remand in this case both for inadequate adjudication due to the failure of the ALJ and the SSAR to develop the evidence and for consideration of the new medical evidence which establishes a listed impairment under Appendix 1 (Id.) for the claimant. Upon remand the Secretary shall obtain consultative physical and psychiatric evaluations for this indigent SSI claimant.

Due to what is perceived to be inadequate adjudication of plaintiff's claim, the court finds "good cause" for remand of this case to the Secretary for further consideration and development as to the matters specified above. If the Secretary is unable to decide this matter in plaintiff's favor on the basis of the existing record, the Secretary will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this Opinion to all counsel of record. The Clerk is further directed to send certified copies of the new medical evidence filed in this case to counsel for the defendant.