**Donald L. HOLST, Plaintiff,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. C–82–855 RJM.**

United States District Court,
E.D. Washington.

June 16, 1986.

Dana C. Madsen, Spokane, Wash., for plaintiff.

Richard H. Wetmore, Asst. Regional Counsel, D.H.H.S., Region X, Seattle, Wash., for defendant.

### ORDER

ROBERT J. McNICHOLS, Chief Judge.

By order entered November 29, 1983 this matter was remanded for reconsideration in light of certain specified authorities.[1] Administrative proceedings have now been concluded and the matter is once again before the Court on the parties' cross-motions for summary judgment.

The supplemental record reflects a unique approach on the part of the ALJ in that he first acknowledged the Court's directions as set forth in the above-referenced order of remand, and then deliberately refused to abide by such directions on the basis that the Court was wrong:

---

1. The remand order directed as follows:

This case will be remanded to the Secretary for reconsideration in light of *Brown v. Heckler*, 713 F.2d 441, 442 (9th Cir.1983); *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983); *Lyle v. Secretary of H.H.S.*, 700 F.2d 566, 568 (9th Cir.1983); *Patti v. Schweiker*, 669 F.2d 582, 586–87 (9th Cir.1982); *see also, Lopez v. Heckler*, 713 F.2d 1432, 1441 (9th Cir.1983) (Pregerson, J., concurring) (discussion of Secretary's policy of nonacquiescence in rule of *Patti*). Stated in its simplest terms, the basis for remand lay in the observation that the ALJ found Mr. Holst disabled for a 30-month period up to point "X." He found Mr. Holst not disabled subsequent to point "X." He didn't say why.

The order also granted plaintiff's motion to remand for taking new evidence. The evidence sought to be introduced was attached to plaintiff's supporting brief and consisted of a small collection of letters and evaluation notes authored by various treating and consulting physicians. Nothing in the order of remand even remotely suggests that granting plaintiff's motion in this limited regard concurrently gave the ALJ leave to conduct *de novo* proceedings.

This case is before the undersigned pursuant to an Appeals Council Remand Order dated February 10, 1984. The Appeals Council Remand Order was in response to a Court Order dated November 23 [*sic*], 1983 from the United States District Court for the Eastern District of Washington. Apparently the claimant filed an application for entitlement to a period of disability, disability insurance benefits and supplemental security income in [*sic*] July 17, 1980 alleging an onset of disability of August 10, 1978. The application was initially denied on August 7, 1980 and denied again on reconsideration on November 24, 1980. The claimant then requested a hearing before an Administrative Law Judge on December 9, 1980. Following a hearing, Administrative Law Judge Leonard E. Baloun issued a decision awarding the claimant a closed period of disability from August 10, 1978 to March 1, 1981. On April 19, 1982, Judge Baloun reopened an earlier Title II application filed on July 16, 1979 and awarded benefits from August 10, 1978 to March 1, 1981 under the claimant's Title II application of July 16, 1979. The claimant was found disabled for Title XVI purposes for the closed period at issue pursuant to his July 17, 1980 application. The claimant appealed the decisions to the U.S. District Court and Judge McNichols was of the opinion that the case was controlled by *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982) and remanded the same to the Secretary for further proceedings.

\* \* \* \* \* \*

The Appeals Council Remand Order states that upon remand the undersigned is to apply the case law contained in *Morrison v. Heckler*, 582 F.Supp. 321 (D.C.Wash.1983), and the case law contained in *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982). *Patti*, stands for the proposition that benefits, once begun, can only be ceased after a showing of medical improvement. The District Court felt that *Patti* applied to a "closed period". The undersigned notes that even a casual reading of *Patti*, shows that, for the medical improvement standard to apply, one must have a final unappealed decision of the Secretary that the claimant was once disabled. This situation does not exist in a closed period case when the original decision of the Secretary has not become final and binding on the parties due to the appeal. The claimant has no final decision whereby *Patti* can operate. Furthermore, *Patti* should not be read as mandating the government perpetuate error. *Patti* is silent on the issue of reopening and revising prior determinations that were in error.... The undersigned is convinced that to base a decision on medical improvement, in this case, would be grossly unjust.

*Tr. 199–200.*

With that, the ALJ proceeded through the steps of a full sequential analysis, and based on prodigious new evidence taken during the supplemental proceedings, held that claimant was not then disabled, and never had been.

The apparent theory is that *Patti* and progeny are inapplicable by virtue of some transmutation whereby the final decision of the Secretary affirming ALJ Baloun somehow became "unfinal" upon being appealed.[2] No one appealed that portion of the

---

2. The Appeals Council posited a similar argument in affirming the ALJ's decision of nondisability. The prior determination that claimant was entitled to a closed period is of no legal effect, it is contended, because the Appeals Council vacated its previous decision affirming that earlier determination. Ostensibly on point is *Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir.1984). In *Lombardo*, the claimant had been found disabled for a closed period and appealed. The Appeals Council vacated the decision and remanded to another ALJ who determined that claimant had never been disabled. The Ninth Circuit held that the factual findings of the first ALJ were not entitled to res judicata impact because the Appeals Council retained the power to totally set aside an ALJ's determination. Thus, the initial findings simply ceased to exist.

The distinguishing feature between *Lombardo* and the facts at hand is that the Appeals Council did not vacate its previous affirmance of the

decision which held that claimant fully met the disability requirements for the closed period. The unambiguous tenor of the order of remand necessarily assumed the validity of the finding that claimant was disabled between August 10, 1978 and March 1, 1981. The fact of Mr. Holst's disability during that period thereby became the law of the case and not subject to tampering in further administrative proceedings.[3] *Hooper v. Heckler,* 752 F.2d 83, 88 (4th Cir. 1985); *see also, Mefford v. Gardner,* 383 F.2d 748, 756 (6th Cir.1967); *Carillo v. Heckler,* 599 F.Supp. 1164, 1168 (S.D.N.Y. 1984); *Brown v. Schweiker,* 557 F.Supp. 190, 194 (M.D.Fla.1983).

As observed by the *Mefford* Court:

The Hearing Examiner was bound to obey the directions of the mandate without variation; and failure to follow the instructions therein given was error. He failed to follow the instructions of the District Court, and, instead, introduced a mass of evidence with the purpose of holding, contrary to the decision of the District Court, that appellee was not suffering from a heart condition which prevented him from carrying out the work in which he was previously engaged. In so doing, and in creating a new case, the Hearing Examiner committed error.

383 F.2d at 756; *see generally, Valdez v. Schweiker,* 575 F.Supp. 1203 (D.Colo.1983).

ALJ until *after* this Court reviewed the record and remanded. If the authorities cited *infra* mean anything at all, they stand for the proposition that the Appeals Council's purported vacation came too late in the game. Any other answer would render the judicial review process a nugatory exercise in futility.

3. Initially, the ALJ so recognized. At the commencement of the supplemental hearing, plaintiff's counsel called the Court's order of remand to the attention of the ALJ who had not previously seen it and was unaware of its content. *Tr. 221.* After having had an opportunity to examine the order, a colloquy ensued between counsel and the ALJ in which the latter suggested that the Court was in error:

I most respectfully observe that Judge McNichols has erroneously applied the *Patti* rule to this case. It is immaterial that it is erroneous. It is the law of this case; therefore the *Patti* standard of measure will be applied in resolv-

Where the district court is itself in error, the Secretary is not without remedies. *Hooper, supra,* 752 F.2d at 88; *Valdez, supra,* 575 F.Supp. at 1205. Among those remedies, however, is not the option of simply ignoring the mandate, nor, as in this case, of purporting to "overrule" such perceived error.

In disposing of the pending motions, several alternatives suggest themselves:

(1) The Court could disregard the procedural facts set forth above and proceed directly to the merits of the full record, taking into account all new evidence adduced at the supplemental hearing.

(2) The Court could reiterate its previous position with regard to applicability of the *Patti* rationale and test the record for substantial evidence while casting aside what the *Mefford* Court refers to as the "new case."

(3) The Court could refuse to condone an anarchical situation wherein the ALJ has presumed to substitute his function for that of the Ninth Circuit Court of Appeals. See *Valdez, supra,* 575 F.Supp. at 1204–05.

The last of these possibilities seems both the most appropriate and the most prophylactically beneficial. Historically, the system has operated in hierarchical fashion with decisional power vested, in ascending order, in an administrative law judge, the Appeals Council, the district court, the court of appeals, and the Supreme Court.[4]

ing the decision. I am admitting a copy of the judgment as exhibit number 58 for the purpose of establishing indeed that it is the law of this case. Despite the fact that it may not be the law in any other case, and in my view is not the law in any other case.... However, I have no intention of being in any way in contempt nor to fail to follow his order, or the law of the case in the case. *Tr. 222.*

Somewhere between that statement of good intentions and the drafting of his decision, the ALJ apparently had a change of heart.

4. This is not to imply that all five entities named are cogs on the same wheel. The first two are arms of the legislative branch, and the latter three of the judicial. Indeed, as observed by Judge Kane in his powerful opinion in *Valdez, supra,* 575 F.Supp. at 1205, the failure of the Secretary to obey a judicial mandate implicates the Separation of Powers Doctrine.

The Supreme Court overrules appellate court decisions, not the other way around. *See, e.g., Thurston Motor Lines v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983). The court of appeals overrules decisions of the trial court, not the other way around. *See, e.g., Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). And the district court overrules the Appeals Council, not the other way around.[5] *Mefford, supra*, 383 F.2d at 756; *Valdez, supra*, 575 F.Supp. at 1204–05.

The bottom line is that the ALJ and the Secretary may well be right in their legal analysis. If so, that position will be vindicated upon further appeal. But they are dead wrong in the ill-conceived assumption of a power not properly theirs.

THEREFORE IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment is DENIED.

(2) Plaintiff's Motion for Summary Judgment is GRANTED.

(3) The decision of the Secretary is REVERSED and REMANDED with directions to pay benefits.

(4) The Clerk shall enter judgment accordingly.[6]

---

5. The Secretary may wish to give some thought to the probable consequences of condoning behavior such as exhibited by the ALJ in this case. If a district court cannot have confidence that its mandate will be observed, then it would be a disservice to the litigants and to the system to remand for further administrative proceedings. The only alternatives then available would be to affirm, or to reverse outright.

Further, the Court can conceive of no set of circumstances in which a studied refusal to obey a judicial mandate would be "substantially justified" within the meaning of the Equal Access to Justice Act codified at 28 U.S.C. § 2412.

*Cf. Derby v. Bowen*, 636 F.Supp. 803 (E.D.Wn. 1986) (C–84–155–RJM).

6. Counsel's attention is directed to *Cartledge v. Heckler*, 615 F.Supp. 545 (N.D.Ill.1985) (motion pursuant to 42 U.S.C. § 406(b)(1) is in the nature of a motion to reconsider under FRCP 59(e) and must be brought timely). This Court has never applied the *Cartledge* rule, but then, the necessity of doing so has not yet arisen. From any practical standpoint, that rule represents a throwback to hypertechnical procedural construction extant in past times best forgotten. Be that as it may, it is difficult to poke holes in the supporting analysis of that decision.