927 F.2d 595
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Albert HANNA, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-1792.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 9, 1990.
Decided Feb. 26, 1991.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert Earl Maxwell, Chief District Judge. (CA-88-180-C)
 Montie VanNostrand, Webster Springs, West Virginia, for appellant.
 Eileen A. Bradley, Chief Counsel, Region III, William B. Reeser, Supervisory Assistant Regional Counsel, Stephen M. Walker, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pennsylvania; William A. Kolibash, United States Attorney, Lisa Ann Grimes, Assistant United States Attorney, Wheeling, West Virginia, for appellee.
 N.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Albert Hanna appeals from a judgment of the United States District Court for the Northern District of West Virginia, which affirmed a final decision of the Secretary of Health and Human Services denying Hanna's applications for social security disability insurance benefits. Finding that there is substantial evidence to support the Secretary's decision, we affirm.
 
 I.
 
 2
 Hanna filed applications for Supplemental Security Income on January 13, 1986, and for Disability Insurance Benefits on January 28, 1986. His applications were denied by an Administrative Law Judge (ALJ) in July 1987. Hanna filed a request for review with the Appeals Council. The Appeals Council remanded the case for vocational expert testimony in December 1987. Upon remand, a different ALJ held a hearing at which Hanna, his wife, and a vocational expert testified. Afterwards, the ALJ denied Hanna's applications, finding that Hanna was not disabled and could perform a full range of unskilled light and sedentary work. Hanna again filed a request for review with the Appeals Council. After considering some new evidence, the Council declined to review the ALJ's decision in November 1988. Therefore, the ALJ's decision became the final decision of the Secretary.
 
 
 3
 Hanna filed this action in the district court, seeking review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g). The matter was referred to a magistrate judge, who made proposed findings of fact and recommended disposition in favor of the Secretary. The district court accepted the magistrate judge's findings and recommendation, granting the Secretary's motion for summary judgment. This appeal followed.
 
 II.
 
 4
 Albert Hanna was born March 29, 1954. He quit school in the eighth grade after repeating two grades; he was 16 years old. He is considered functionally illiterate, with reading and math skills below the level of his education. He worked for approximately eleven years as an underground coal miner, doing jobs considered unskilled and requiring heavy exertion. He worked in the mines until he injured his back on November 17, 1985. He went to the hospital the following day and was referred to Dr. Zibilich, a general practitioner. After a couple of weeks, Dr. Zibilich referred Hanna to a neurosurgeon, Dr. Lillard.
 
 
 5
 Dr. Lillard treated Hanna with bedrest at first. However, that treatment proved unsuccessful, and Dr. Lillard performed surgery on Hanna's back in March 1986. In April 1986, after the surgery, Hanna was discharged from the hospital. He wore a back brace and was told not to drive, ride, bend or lift.
 
 
 6
 On April 30, 1986, an orthopedic surgeon, Dr. Lee, examined Hanna for Worker's Compensation purposes. Hanna's back pain had improved since the surgery, but he remained temporarily and totally disabled.
 
 
 7
 Dr. Lillard continued to treat Hanna, seeing him in April, May, June, and August of 1986. At the August visit, Hanna had some stinging in his incision and some increased back pain because he had jerked his back by stepping in a hole. He had no leg pain. Dr. Lillard was pleased with Hanna's progress, and thus required Hanna to wear the back brace only when in an automobile. Dr. Lillard thought that Hanna could return to some type of work in a couple of months, but not heavy work like he had done before. Dr. Lillard concluded that Hanna had reached a maximum point of improvement.
 
 
 8
 Another orthopedic surgeon, Dr. Landis, examined Hanna for Worker's Compensation purposes. Dr. Landis noted that Hanna could undress himself and got onto and off the examining table without much difficulty. He found 30% restriction in the range of motion of the lumbosacral spine. He found no evidence of significant spasm. Hanna walked with normal agility and without difficulty. He thought that Hanna did not need further treatment, and that he was 15% permanently partially disabled by the back injury.
 
 
 9
 Dr. Zibilich continued to treat Hanna throughout the period following his surgery. In May 1988, Dr. Zibilich completed a form sent by Hanna's attorney. She checked blocks indicating that Hanna would be unable to perform exertional work on a full-time basis, that he might be able to do sedentary work part-time. She indicated that he would not be able to balance, stoop, crouch, or squat. She also indicated that he would experience chronic moderate pain.
 
 
 10
 Dr. Lee examined Hanna again in January 1988. He noted that Hanna wore no back support. He found muscle spasm. He did not recommend further treatment, but thought that Hanna was 21% permanently partially disabled.
 
 
 11
 Hanna also underwent psychological evaluations after his back injury. Dr. Andrews and Dr. Kelly, both licensed psychologists, and clinical psychologist Greg Bowland evaluated Hanna. They all found that Hanna had borderline intellectual functioning with IQ scores in the 74-87 range. Dr. Kelly reported that Hanna claimed to have low levels of chronic pain.
 
 
 12
 At the hearing on remand before the second ALJ, a vocational expert testified regarding the possibility of employment for Hanna. The ALJ posed a series of hypothetical questions to the vocational expert. First, he included Hanna's characteristics including his age, education, back injury precluding medium or heavy labor, and hearing and stomach problems. The vocational expert testified that there would be a number of light and sedentary jobs available to Hanna including janitor, flagman, park work, factory sweeper, and press operator.
 
 
 13
 The ALJ next added the characteristics of generalized anxiety disorder, borderline intellectual functioning, some functional illiteracy, hypochondriacal tendencies, need for some treatment but ability to work, and nervousness in adjusting to new employment. The vocational expert testified that there would still be a number of light and sedentary jobs available to Hanna, but that he would be precluded from the factory jobs like the precision machine operator.
 
 
 14
 Counsel for Hanna then followed up by asking the vocational expert to assume the characteristics checked off by Dr. Zibilich, including chronic moderate pain and inability to stoop, and balance. The vocational expert testified that such a person would not be able to perform work on a sustained basis.
 
 III.
 
 15
 The standard of review in this case is governed by Section 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g), as follows: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The Secretary, and not the courts, is charged with reconciling inconsistencies in the evidence. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir.1974); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Thus, the Secretary's findings must be upheld if they are supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972); Oppenheim v. Finch, 495 F.2d at 397.
 
 
 16
 Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, we do not review the Secretary's decision de novo. Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir.1964); Blalock v. Richardson, 483 F.2d at 775. With regard to the Secretary's findings concerning disputed medical testimony, "it is immaterial that eight medical witnesses disagreed with the [Secretary's] conclusion, provided one such witness gave sufficient probative evidence." Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984).
 
 IV.
 
 17
 Hanna asserts that the ALJ erroneously relied upon the medical-vocational guidelines (the "grids") and failed to rely upon the vocational expert's response to the hypothetical question posed by Hanna's counsel. We agree with Hanna that the ALJ could not rely on the grids exclusively; however, we do not agree that the ALJ improperly relied upon them. Nor do we agree that the ALJ was required to rely upon the vocational expert's answer to the hypothetical question posed by counsel.
 
 
 18
 The regulations provide that the grids cannot be applied conclusively where non-exertional impairments exist in conjunction with exertional limitations, and individualized considerations must be given to all relevant facts. 20 C.F.R. Sec. 404, subpart P, Appendix 2, Sec. 200.00(a), (d)-(e); 20 C.F.R. Sec. 404.1569; Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983). We have previously held that "because the grids do not automatically apply when a non-exertional impairment exists, the testimony of a vocational expert is normally required." Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir.1985).
 
 
 19
 Hanna relies upon our decision in Hooper v. Heckler for support for his contention that the ALJ improperly relied upon the grids. In Hooper, the ALJ erroneously relied upon the grids where the disability claim involved primarily non-exertional impairments. Id. at 87. At the hearing, a vocational expert testified that Hooper's job prospects were poor. He further testified that the only jobs she could physically perform were in an environment in which she could not function given her psychological impairment. Id. Despite the vocational expert's testimony, the ALJ found that Hooper was not disabled. On appeal, we found that the ALJ improperly relied upon the grids:
 
 
 20
 [The vocational expert] assumed that claimant was restricted from low back motions and would have to alternate between sitting and standing, and further assumed that she had a mild to moderate mental impairment. Assuming, in addition to these factors, that claimant experienced moderate pain relieved by medication affecting her concentration, [the vocational expert] testified that Hooper would be unable to work. He repeated [the consulting psychiatrist's] conclusion that Hooper could not work a forty- to forty-eight hour week, in surroundings described as noisy, with many people and machines, where she would have to concentrate on details and generally work in a stressful environment. The Secretary offered no evidence to refute Hooper's degree of pain, the effect of her pain medication, or the effect of medication on her nervous condition. Thus, the Secretary could only have reached a finding of not disabled in this case by concluding that the grids directed such a result.
 
 
 21
 Id. at 88.
 
 
 22
 The case at bar is factually different from Hooper. At the hearing, the ALJ posed hypothetical questions to the vocational expert based upon Hanna's limitations and pain level agreed upon by the majority of the treating and examining physicians. The vocational expert testified that numerous sedentary or light jobs would be available. Then, Hanna's counsel posed an additional hypothetical question based upon the form filled out by Dr. Zibilich, which set out that Hanna experienced chronic moderate pain. In response to counsel's hypothetical question, the vocational expert testified that Hanna would not be able to work on a sustained basis.
 
 
 23
 In rendering his decision, the ALJ was in a position of resolving inconsistent medical evidence: (1) the evidence of several doctors supporting the vocational expert's conclusion that Hanna could perform light or sedentary work; and (2) the contrary evidence in Dr. Zibilich's statement supporting the conclusion that Hanna could not work. Factually, this case is distinguishable from Hooper where the Secretary had put forth no contrary evidence.
 
 
 24
 The Secretary has the duty of resolving conflicts in medical evidence. Richardson v. Perales, 402 U.S. at 399 (the trier of fact has the duty to resolve the frequent situation of conflicting medical evidence); Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir.1985) ("The medical evidence was conflicting; the medical reports were all based upon first-hand examinations by evidently competent professionals; someone had to resolve the conflict, and under the statute, that someone is the Secretary's delegate."). In this case, the ALJ resolved the conflict in the medical evidence by apparently rejecting Dr. Zibilich's conclusions regarding Hanna's pain in favor of the medical evidence to the contrary.
 
 
 25
 Hanna asserts that the ALJ should have relied upon Dr. Zibilich's conclusions under the attending physicians rule. That rule, as applied in the Fourth Circuit, "requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987).
 
 
 26
 In this case, the only evidence that Hanna suffered "chronic moderate pain" was in Dr. Zibilich's conclusion on the form supplied by Hanna's attorney. Dr. Zibilich's objective reports, as well as those of the orthopedic surgeons who examined Hanna, did not support such a conclusion. There was evidence that Hanna tended to exaggerate his symptoms. Dr. Lillard, the orthopedic surgeon who operated on Hanna, reported that Hanna's pain was reduced at the time of his release. Dr. Landis reported that Hanna could move without difficulty. Dr. Kelly reported that Hanna complained of "low levels of chronic pain at all times." This evidence was substantial, in light of the fact that the only reference to more intense pain is found in the conclusory statement of Dr. Zibilich.
 
 
 27
 Under the treating physicians rule, the ALJ properly disregarded Dr. Zibilich's conclusion because that conclusion was contradicted by substantial evidence. Therefore, the ALJ did not err by refusing to base his decision upon the hypothetical question posed by counsel.
 
 
 28
 Were we the trier of fact, we might conclude that Hanna was disabled based upon Dr. Zibilich's conclusions. However, as an appellate court, we are bound by our narrow scope of review. We stated in Seacrist v. Weinberger that
 
 
 29
 it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion. Accordingly, while we are unable to say that no other conclusion can be drawn from the evidence presented, we find that the Secretary's determination is supported by substantial evidence.
 
 
 30
 538 F.2d 1054, 1057 (4th Cir.1976). In this case, there was substantial evidence supporting the Secretary's determination that Hanna was not disabled. The district court properly affirmed the Secretary's determination. Therefore, we hereby affirm the decision of the district court.
 
 AFFIRMED