**Charlotte FERRIS, et al., Plaintiffs,**

v.

**The UNIVERSITY OF TEXAS AT AUSTIN, et al., Defendants.**

**Civ. A. No. A–78–CA–278.**

United States District Court, W.D. Texas, Austin Division.

March 2, 1983.

538

James C. Todd, Advocacy Incorporated, Austin, Tex., Dewey Hicks, Matthews, Allen & Russell, Dallas, Tex., for plaintiffs.

Lonnie Zwiener, Asst. Atty. Gen., Austin, Tex., for defendants; W.O. Shultz, II, Robert Giddings, University of Texas System, Austin, Tex., of counsel.

## MEMORANDUM OPINION AND ORDER

JACK ROBERTS, Senior District Judge.

Plaintiffs, students or would-be students at the University of Texas at Austin, seek declaratory and injunctive relief requiring the university to make its "shuttle buses" accessible to wheelchairs. This court finds that the shuttle bus system is not a program receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp.1982), that there is no violation of the equal protection clause of the Fourteenth Amendment, and that there is no breach of contract to provide bus services to the handicapped by virtue of statements in the university information booklet. Plaintiffs' requested relief is therefore denied.

I.

The University of Texas at Austin is a downtown campus with inadequate facilities to house all of its 48,000 students. Consequently only 12 percent of the student body lives on campus, only 43 percent live in the same two zip code areas as the university, and the other 45 percent lives some distance from campus. To alleviate a severe parking problem caused by so many commuters to the campus, the university contracts with Transportation Enterprises, Inc. (TEI) for shuttle bus service between the university campus and areas of Austin with large student populations. (Plaintiff's Exhibit 11) TEI also provides transportation within the campus itself. *Id.* The fixed transportation is financed solely through a student services fee paid semesterly by each student enrolled at the university. (Plaintiff's Exhibit 16)

Plaintiffs are confined to wheelchairs and are therefore handicapped individuals under the Rehabilitation Act of 1973. They all pay the mandatory student services fees each semester which are used in part to pay for the operation of the shuttle bus system but cannot use the buses because they are not accessible to wheelchairs. Plaintiffs contend that the university's failure to provide them with accessible shuttle service limits their ability to fully participate in academic and extra-curricular programs. On this basis they assert three causes of action: (1) a violation of § 504 of the Rehabilitation Act of 1973, (2) denial of equal protection under the Fourteenth Amendment, and (3) breach of contract with the university to provide bus transportation in exchange for the student services fees.

The court's jurisdiction over the constitutional and statutory claims is conferred by 28 U.S.C. § 1331. Jurisdiction over the claim for declaratory judgment is conferred by 28 U.S.C. § 2201 as well as 28 U.S.C. § 1331. The court has pendent jurisdiction of the state contract claim under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiffs have a private right of action to challenge the alleged violations of § 504 of

the Rehabilitation Act of 1973, 29 U.S.C. § 794. *Camenisch v. The University of Texas,* 616 F.2d 127, 130 (5th Cir.1980), vacated on other grounds 451 U.S. 390 (1981); *Baker v. Bell,* 630 F.2d 1046, 1055 (5th Cir. 1980); *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1280, 1286 (7th Cir.1977); *accord, Bossier Parish School Board v. Lemon,* 370 F.2d 847, 850 (5th Cir.1967), cert. den. 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967).

## II.

■ Plaintiffs' first and principal claim is that the University of Texas, by failing to provide plaintiffs with access to the shuttle bus system, has violated § 504 of the Rehabilitation Act. That act provides in pertinent part:

No *otherwise qualified handicapped individual* ... shall solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any *program* or activity *receiving Federal financial assistance.* (emphasis added)

29 U.S.C. § 794 (Supp.1982)

To establish a cause of action under this section plaintiffs must show all three elements underlined:

(a) that they are otherwise qualified to participate in the program;

(b) that the shuttle bus system or educational system is a program for purposes of the act, and

(c) that the program receives federal financial assistance.

### A. Otherwise Qualified

■ The court has no difficulty in holding that plaintiffs are "otherwise qualified handicapped individuals" protected by § 504 of the Rehabilitation Act. The Supreme Court has defined an otherwise qualified person as "one who is able to meet all of a program's requirements in spite of his handicap". *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct.

2361, 2367, 60 L.Ed.2d 980 (1979). The high court recognizes that in some cases legitimate physical qualifications may be essential to participation in particular programs. 442 U.S. at 407, 99 S.Ct. at 2367. For example, in *Davis* the court held that a deaf student was not "otherwise qualified" to participate in a nurses's training program where the ability to hear was requisite to the performance of a nurse's duties. *Id.* No such barrier exists here, however. Plaintiffs' lack of mobility is not a barrier to participation in their selected academic programs. They are able to meet the entrance requirements and able to perform the academic requirements of their selected courses of study. Plaintiffs are also able to participate in the shuttle bus program if physical barriers are removed to enable this participation. See *Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority,* 549 F.Supp. 592, 606 (D.C.R.I.1982). The court therefore finds that plaintiffs are "otherwise qualified handicapped individuals" under the act.

### B. Program Receiving Federal Financial Assistance

The second requirement for a cause of action under Section 504 is to establish the existence of a "program". This is a nebulous concept but an important one in defining the reach of federal regulation permissible through the advancement of federal funds.

Plaintiffs contend that both the shuttle bus system and the University of Texas itself are "programs" under Section 504. Defendants contend that only the university is a "program" (see Defendant's Proposed Findings of Law) since the shuttle bus system receives no direct federal monies for its operation. This court disagrees with both positions.

"Program" has not been defined by the Supreme Court for purposes of enforcing this or other similarly worded civil rights acts.[1] See *North Haven Board of Educa-*

---

1. The court here interprets the term "program" for Title VI, § 601 of the Civil Rights Act of 1964, 42 U.S.C. 2000d. That act provides, in pertinent part, that:

tion v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 1927, 72 L.Ed.2d 299, 319 (1982). That opinion left the definition to the district court. *Id.* A number of definitions and tests, some of which appear to conflict, have been formulated by other courts, however.

Where direct federal assistance is involved, the delineations of a "program" are discernible. The Fifth Circuit has stated that to determine what constitutes a "program" one looks at the individual act, statute, or grant that establishes it. *Board of Public Instruction of Taylor Co., Fla. v. Finch,* 414 F.2d 1068, 1077 (5th Cir.1969). For example, in *Board of Public Instruction* Title II, Elementary and Secondary Education Act, 20 U.S.C. § 241 (Supp.1969), Title III, Elementary and Secondary Education Act of 1965, 20 U.S.C. § 841 et seq. (Supp. 1969), and Basic Education for Adults, 20 U.S.C. § 1201 et seq. (Supp.1969) were held to be three separate programs. Thus HEW could not terminate federal assistance in one "program" for the violations that occurred in another unless it could show that the second program was so infected by the discriminatory practices of the former that the latter thereby became discriminatory. *Id.* at 1079. The purpose of this rule is to protect innocent beneficiaries of programs not tainted by discriminatory practices from retaliatory actions. *Id.* at 1075. Remedies must therefore be "program specific"—i.e. confined to the offending program or to programs infected by the offending program.

This doctrine has been said to be stumbling block to full implementation of civil rights legislation such as Section 504 of the Rehabilitation Act. Todd, *Title IX of the 1972 Education Amendments: Preventing Sex Discrimination in Public Schools,* 53 Tex.L.Rev. 103, 108 (1975).[2] At the least, the doctrine is difficult to reconcile with

programs receiving indirect federal funding. *Grove City College v. Bell,* 687 F.2d 684, 697 (3rd Cir.1982), cert. granted —— U.S. ——, 103 S.Ct. 1181, 75 L.Ed.2d 429. How does one look to the enacting statute where, as here, a bus system does not receive direct federal appropriations? Does the program specific doctrine mean that programs which receive indirect federal funding can never come within the reach of discrimination statutes? *Board of Public Instruction,* 414 F.2d at 1079, implies a negative response to this question, indicating that HEW may terminate funds to a program that is "so affected by discriminatory practices elsewhere in the school system that it thereby becomes discriminatory".

The issue of indirect funding was addressed more directly in *Grove City College v. Bell* by the Third Circuit. That court was asked to determine if the Department of Education could terminate federal grants and loans to students because the college refused to file an "assurance of compliance" with Title IX. *Id.* at 688–689. The Third Circuit held that the college was itself a "program" and therefore subject to termination of indirect federal assistance (student loans and grants). *Id.* at 700. This holding was based on the broad purpose of the statute, the court citing the "full scope" of the "non-discriminatory purpose that Title IX was enacted to achieve". *Id.* at 697. The Third Circuit apparently feared that a compartmentalized analysis of "programs" would lead to difficulty in enforcing the broad purpose of the act. See 687 F.2d at 698.

Plaintiffs rely on *Grove City College* to support the assertion that the University of Texas is a "program" for purposes of Section 504 of the Rehabilitation Act of 1973. Such a conclusion is contrary to the clear language of the Fifth Circuit in *Board of*

---

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

2. Title IX of Education Amendments of 1972, 20 U.S.C. § 1681 contains substantially similar language to Section 504:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

*Public Instruction.* The appellate court stated that a program is not a collective concept such as a "school program" or a "road program". *Board of Public Instruction of Taylor Co. Fla. v. Finch,* 414 F.2d at 1077. The program specific requirement has subsequently been adopted by the Supreme Court in *North Haven v. Bell,* 456 U.S. at 534–537, 102 S.Ct. at 1925–1926, 72 L.Ed.2d at 317–318. *Accord, Hillsdale College v. Department of Health, Education, and Welfare,* 696 F.2d 418 (6th Cir. 1983). This court, in reliance on these decisions, finds that the University of Texas is not a "program" for purposes of Section 504 of the Rehabilitation Act.

Plaintiffs also contend that the shuttle bus system is a "program" for purposes of Section 504. They argue, first, that the shuttle bus system receives indirect federal financial assistance through receipt of student grant and loan money. The government makes grants and loans to students and a portion of these federal funds go toward the student services fees which finance the shuttle bus system. The shuttle bus system is thereby a "program" receiving federal financial assistance under Section 504, according to plaintiffs' reasoning.

This court cannot accept the proposition that mere receipt of student loans and grants makes the shuttle bus system a "program" under Section 504. As authority for that proposition plaintiffs cite *Bob Jones University v. Johnson,* 396 F.Supp. 597 (D.C.S.C.1974), aff'd 529 F.2d 514 (4th Cir. 1975). In that case, Bob Jones University refused, on religious grounds, to admit single, non-white students. The school received no direct federal financial assistance, but 221 of its students received Veterans Administration benefits to attend the university. The Department of Health, Education, and Welfare sought to terminate benefits to the students on the grounds of the racially discriminatory practices of the university. The court was therefore asked if such termination was appropriate on the basis that the university was a "program" within Section 601 of Title VI, 42 U.S.C. 2000d. *Id.* at 601. The court held that it was, noting that the recipient of the pay-

ment, whether school or student, was immaterial. *Id.* at 602. The crucial issue was whether the designated benefits of the statutes flowed to the institution. *Id.* at 603. Since federal assistance payments to the students defrayed the costs of education and freed up other funds at the school for use in other areas, the school was found to be a direct beneficiary of federal aid and was therefore a "program" receiving federal financial assistance. This court does not reject that reasoning but distinguishes that case from the case at bar.

In *Bob Jones University* students received Veterans Administration payments for the purpose of obtaining an education at that university. When the university was deemed to be in violation of Section 601 of Title VI, the remedy was termination of the students' federal assistance. The effect of the remedy was the loss of financial benefits to the school, whose policies were racially discriminatory, and the loss of the right to receive federal assistance to attend a racially discriminatory school by the student. The effect of the remedy was, therefore, limited to the offending "program" and therefore not in violation of the program specific guidelines of *Board of Public Instruction* and *North Haven.*

Such is not the case here. Were the shuttle bus system deemed to be in violation of Section 504 of the Rehabilitation Act, the remedy would be termination of funds to some other program such as nursing, pharmacy, etc. This would penalize innocent programs for violations of the shuttle bus system and thereby violate the program's specific requirement. *Board of Public Instruction of Taylor Co., Fla. v. Finch,* 414 F.2d at 1075.

Furthermore, in Bob Jones University student loans and grants went to the support of the general curriculum and could not be insulated from the taint of the discrimination of school wide policies. It was therefore proper for the court to terminate the school's federal assistance. *North Haven Board of Education v. Bell,* 456 U.S. at 539, 102 S.Ct. at 1927, 72 L.Ed.2d at

319. In the instant case, however, any "taint" associated with the shuttle bus system is confined to the bus system alone. The university has made extensive efforts to comply with Section 504. It has reserved rooms for the handicapped at a dormitory on campus. It spent $2 million on modifications to classrooms and offices to eliminate steps and provide adequate restroom facilities. Curb cuts and ramps on the street have eliminated most barriers within the campus for wheelchairs. Parking places were reserved for the handicapped in locations adjacent to most campus buildings. Thus the university cannot be accused of a school wide discriminatory purpose unbounded by program borders.

Because of these differences in the cases, the court feels that plaintiffs' interpretation of *Bob Jones University* is too broad. Plaintiffs seem to imply that *Bob Jones University* means that any payment of federal loans and grants to students subjects all programs on which those loans and grants are spent to regulation by the federal government. One can imagine extreme results by extending this principal without limitation. For example, if a student receives a student loan and uses a portion of the money to pay for off campus housing, is the private apartment complex subject to Section 504 as a recipient of federal financial assistance? Would the store where a student buys his books be subject to Section 504?

This seems to this court to be beyond the intended reach of that Section. Section 504 was enacted to prevent discrimination against the handicapped in federally assisted transportation programs. 4 *U.S.Code Cong.` & Ad.News* 6373, 6388, 6390 (1974). It was not intended to provide a means of regulating private transportation with so tenuous an association to federal funds. It is admittedly difficult to determine the reach of Section 504. *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979). This court notes a common theme among the cases, however.

In *Board of Public Instruction of Taylor Co., Fla. v. Finch,* 414 F.2d at 1079, the court advises that a program should not be considered in isolation from its context; there must be a finding, however, that a program not receiving federal funds is so affected by discriminatory practices elsewhere in the school system that it thereby becomes discriminatory. Likewise, in *North Haven Board of Education v. Bell,* 456 U.S. at 539, 102 S.Ct. at 1927, 72 L.Ed.2d at 319, the Supreme Court condones the termination of indirect federal funding to a program that is "infected" by a discriminatory environment. In *Grove City College v. Bell,* 687 F.2d at 700, the court holds that to determine the existence of a program one must determine to whom the benefits inure. Similarly, in *Bob Jones University v. Johnson,* 396 F.Supp. at 602, the court finds that the school is a program because it receives the intended benefits of the Veterans Administration payments.

All of these cases seek to extend the coverage of a civil rights act to programs that receive indirect federal financial assistance where there is (1) a benefit or a taint and (2) a direct relation or nexus between that benefit or taint and the intended purpose of the federal financial assistance. In this case the court finds inadequate nexus between the funding programs and the alleged violations of the Rehabilitation Act.

■ It must be noted that the court assigns no importance to the fact that the relief sought by plaintiffs in this case is declaratory and injunctive relief rather than termination of federal funds. The Supreme Court specifically rejected the Second Circuit's implication that an agency had broader regulatory powers than its termination powers allowed, stating "Certainly it makes little sense to interpret the statute, as respondents urge, to authorize an agency to promulgate rules that it cannot enforce". *North Haven Board of Education v. Bell,* 456 U.S. at 537, 102 S.Ct. at 1926, 72 L.Ed.2d at 318. Thus whether the remedy is termination of funds, declaratory judgment, or injunctive relief is immaterial. The remedy must be specific to the pro-

gram in violation of the act. The court therefore finds that the shuttle bus system at the University of Texas is not a "program" for purposes of Section 504 of the Rehabilitation Act of 1973, that it does not receive federal financial assistance for purposes of that act, and therefore is not subject to its requirements.

■ Plaintiffs also argue that the shuttle bus system is a "program" receiving federal financial assistance by virtue of the fact it "receives" unrestricted federal grant monies. The university received $8,857,604.78 in 1981 in unrestricted federal financial assistance. These funds were allocated for indirect cost recovery, i.e. to help pay for utilities, laboratory space, etc., required as part of the federally funded programs. These funds were commingled with the student services fees in the general operating budget of the University. Plaintiffs argue that, since these funds were commingled in one account, the shuttle bus system "received" federal financial assistance. The court rejects this argument.

It is clear that the purpose of these unrestricted funds is to compensate the university for any costs it may have incurred in the administration of federal programs and are unrelated to the shuttle bus system. This court assigns no relevance to the fact that these unrestricted funds may have been commingled with the student services fees which support the shuttle bus system. This is purely an accounting device. Plaintiffs must demonstrate more than the possibility that federal dollars were commingled in the same account. They must show that the shuttle bus system received the intended benefits of the federally funded program. *Board of Public Instruction of Taylor Co., Fla. v. Finch,* 414 F.2d at 1076. This plaintiffs have failed to do and accordingly this court finds no receipt of federal assistance on this basis.

### III.

Plaintiffs' second cause of action is that failure to provide plaintiffs with access to the shuttle bus system denies them equal protection under the Fourteenth Amend-

ment. They allege that the defendants' refusal to accommodate the access needs of mobility impaired students in effect creates two classes of students each of which is required to pay student services fees for the right to ride the shuttle buses: ambulatory students, who are able to ride the buses, and wheelchair bound students, who are not able to ride the buses. Such classification of students by the university obligates it, according to plaintiffs, to identify a reasonable government objective which is rationally advanced by the disparate treatment of the classes.

The court notes, first, that the principal purpose of the shuttle bus system is to relieve traffic congestion created by commuters to the campus. Plaintiffs concede that the University has provided housing on campus for the mobility impaired. Their chief purpose in filing this suit is to obtain transportation to enable them to live off campus. (See testimony of Nancy Crowther, Charlotte Ferris)

■ The first issue to be determined is if the classification imposed by the university is inherently invidious or if it impinges on fundamental rights. *Schweiker v. Wilson,* 450 U.S. 221, 226, 101 S.Ct. 1074, 1078, 67 L.Ed.2d 186 (1981). Plaintiffs must show that the right to ride the shuttle bus system is a property right protected by the Constitution. *Logan v. Zimmerman,* 455 U.S. 422, 102 S.Ct. 1148, 1153–1154, 71 L.Ed.2d 265 (1982) Plaintiffs give no authority for such a proposition, nor can this court find any. The court cannot say that the right to live off campus while attending a university is a property right for purposes of the equal protection clause. Plaintiffs are not precluded from attending the university, nor is on-campus residence an inhibiting factor to their education. Defendants offer evidence that the difficulties of transportation for the handicapped may, in fact, be increased by off campus living. Students would have to obtain other transportation besides the shuttle bus to buy groceries, to return to campus, and to attend extracurricular events on weekend hours when the shuttle buses do not operate.

■ Having found no property interest, the court's standard of review is whether the university's classification system is rationally related to a legitimate governmental interest. *Schweiker v. Wilson,* 450 U.S. at 230, 101 S.Ct. at 1080. The court finds that a legitimate governmental interest does exist. Defendants have demonstrated that the costs of modifying each shuttle bus to accommodate wheelchairs would approximate $9,000–$11,000 per bus. (Testimony of Conwell Smith, Representative of Wayne School Buses) In addition to the financial costs, the shuttle bus system would be considerably delayed by the time required to board students in wheelchairs. One expert estimated the time required for a wheelchair bound person to board a shuttle bus at one and one-half to four minutes per stop, depending on the experience of the driver and the student. This additional time would significantly hamper the operation of the shuttle bus system, creating delays in schedules and requiring the addition of additional buses and drivers. While this cost might be justified in some locations where there are significant numbers of handicapped persons, see *Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority,* 549 F.Supp. 592, 594 (D.C.R.I.1982), such numbers are not present here. Of the 48,000 students at the University of Texas at Austin, only 25–35 students are mobility impaired. This court cannot say that the equal protection clause requires major expenditures of funds for so small a number of students where no fundamental right is at stake. The university may "rationally desire to economize in the disbursement of .. funds". *Schweiker v. Wilson,* 450 U.S. at 237, 101 S.Ct. at 1084. *Accord, Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980. Accordingly, this court finds that a legitimate governmental interest exists for the classification and the university is not in violation of plaintiffs' rights under the equal protection clause of the U.S. Constitution.

## IV.

Plaintiffs' third cause of action is that the University of Texas has breached its contract with plaintiffs to provide shuttle bus transportation. Plaintiffs claim that they have duly paid their student services fees, in return for which they were promised the right to ride the shuttle buses. By failing to provide accessibility to the buses, defendants have allegedly breached their contractual obligation to plaintiffs.

■ The University of Texas General Information booklet, UT Publication Issue No. 8209 (1982) provides in pertinent part:

*General fee and student services fee (required)*

The student services fee covers all, or a portion of, the cost of Students' Attorney, Student Health Center, Division of Recreational Sports, Shuttle Bus Service, Student Activities Office, Election Commission, Senior Cabinet, *The Daily Texan,* and Ombudsman.

(Plaintiffs' Exhibit 18)

This court cannot construe the language in the catalogue to impose on the University of Texas a burden to modify its buses to accommodate wheelchairs. The language indicates the use of the student services fees but does not guarantee use of any services to each individual student. The record shows that of the 48,000 students at the university, an average of only 18,000 students use the shuttle bus system. (Testimony of James Wilson, Assistant to the Vice President for Business Affairs). Students who do not live near a shuttle bus route could not petition for a refund of their student services fees because the buses are not accessible to their homes. The "contract" is merely a general statement of the use of the fees and the services provided by them. It makes no commitment of service to an individual on the basis of receiving his fee.

## CONCLUSION

The court finds that the shuttle bus system at the University of Texas is not a program receiving Federal financial assistance for purposes of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

(Supp.1982) and is therefore not subject to the requirements of that act. The court finds that the University of Texas is not a "program" for purposes of that act because it is not "program specific". The court also finds that the University of Texas at Austin has no obligation under the equal protection clause of the Fourteenth Amendment to make major expenditures of funds required to make the shuttle bus system accessible to wheelchairs. Finally, the court finds that the University of Texas at Austin has not contracted to provide shuttle bus service to mobility impaired students on the basis of statements made in the University of Texas General Information booklet. It is accordingly

ORDERED, ADJUDGED, and DECREED that the declaratory and injunctive relief sought by plaintiffs be, and hereby is DENIED.