**Richard Don DERBY, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. C–84–155 RJM.**

United States District Court,
E.D. Washington.

June 10, 1986.

Michael E. deGrasse, Walla Walla, Wash., for plaintiff.

James B. Crum, Asst. U.S. Atty., Kathryn A. Warma, Asst. Regional Counsel, Dept. of Health and Human Services, Spokane, Wash., for defendant.

## MEMORANDUM OPINION

ROBERT J. McNICHOLS, Chief Judge.

By order entered May 24, 1985 this matter was remanded to the Secretary for further administrative proceedings on the alternative bases that: (1) plaintiff appeared to be a member of the *Smith* class and thereby entitled to reconsideration of his claim without application of the "non-severity". rule found at 20 C.F.R. § 404.1520(c);[1] and (2) the Secretary accorded too much weight to the testimony of several "long distance" experts who had never seen claimant, and too little weight to the conclusion of one of the agency's own experts who did examine Mr. Derby.[2]

---

1. *Smith v. Heckler,* 595 F.Supp. 1173 (E.D.Cal. 1984). The *Smith* decision enjoined application of the "non-severity" regulation found at 20 C.F.R. § 404.1520(c) which provides:

*You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

2. With regard to the ALJ's improper balancing, the order of remand contained the following observations:

The other noteworthy topic involves the ALJ's treatment of Dr. Stevenson's reports of March 26, 1983. *Tr. 152–54.* At the close of the hearing, the ALJ observed the necessity of obtaining an additional orthopedic evalua-

Plaintiff then sought an award of attorney fees under the Equal Access to Justice Act [EAJA], and by order entered July 29, 1985 that motion was denied on the basis that the order of remand was not a "final judgment" within the meaning of 28 U.S.C. § 2412(d)(1)(B).[3]

At the conclusion of supplemental administrative proceedings, the Appeals Council affirmed the ALJ's recommended decision that Mr. Derby be found disabled. Plaintiff thereafter renewed his request for attorney fees. By order entered March 4, 1986 the Court requested additional briefing in light of the 1985 Amendments to the EAJA; P.L. 99–80.[4] That order also directed defendant to file any additional decisions or supplemental transcripts which may have developed during the course of the administrative process on remand.[5] The matter is now fully briefed and is ripe for disposition.

The threshold inquiry is whether the Court has authority to enter a final judgment when a previously-remanded action has resulted in a litigant obtaining all of the relief sought at the administrative level. The government argues that if a final order is to be entered at all, it should be an order dismissing the action as moot. In light of the extensive legislative history accompanying the 1985 Amendments to the EAJA, however, it would appear that plaintiff has the better position:

> The court will usually decline to make an award upon the remand decision because the remand order did not yet make the applicant a "prevailing party" and therefore eligible under the EAJA. But see, *MacDonald v. Schweiker,* 553 F.Supp. 536 (E.D.N.Y.1982). In *Guthrie v. Schweiker,* 718 F.2d 104 (4th Cir.1983), the Court pointed to the provision of 42 U.S.C. 405(g) providing that after the HHS review upon remand the agency must file its findings with the reviewing court. Thus the remand decision is not a "final judgment," nor is the agency decision after remand. Instead, the District Court should enter an order affirming, modifying, or reversing the final HHS decision, and this will usually be the final judgment that starts the thirty days running. See also, *Brown v. Secretary of Health and Human Services,* 747 F.2d 878 (3rd Cir.1984). In addition, as the *Brown* court points out, the remanding courts are vested with full equity powers and need not simply wait for the agency

---

tion. *Tr. 59.* Claimant was thereafter sent to Dr. Stevenson. In his concluding remarks, the physician noted as follows:

[Claimant] admits if his discomfort in the low back was relieved he could return to his usual employment on a reasonably continuous basis. I would feel at the present time that he is unemployable and that he might be improved with a successful completion of the fusion of the L5–S–1.

*Tr. 154.*

The ALJ made reference to Dr. Stevenson's report, and indeed, even cited the specific language quoted above. *Tr. 11.* There the matter ended, however, and the record is devoid of any analysis demonstrating a basis for rejecting Dr. Stevenson's views. It is true that conflicts in medical testimony which involve credibility calls are for the Secretary to resolve. *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). At the same time, it is incumbent upon the Secretary to provide "clear and convincing reasons for rejecting [an expert's] opinion." *Id.* Specificity of findings has long been the rule in this Circuit. *See, e.g., Lewin v. Schweiker,* 654 F.2d 631, 634–35 (9th Cir.1981). It strikes the Court that when an expert, and an expert chosen by the Secretary at that, renders an opinion that one is disabled and is in need of additional surgery to correct such disability, that opinion is highly relevant both with regard to objective medical condition, and with regard to the issue of whether plaintiff's subjective complaints are supported by clinically demonstrable facts.

3. *Declining to follow, Coffman v. Heckler,* 580 F.Supp. 67 (N.D.Cal.1984); *Gross v. Schweiker,* 563 F.Supp. 260 (N.D.Ind.1983).

4. Reference to P.L. 99–80 as amendatory may be a misnomer. As originally enacted, § 2412(d) of the Act contained a sunset clause whereby that subsection died a natural death effective October 1, 1984. See § 2412(d)(5)(c); P.L. 96–481. Actions still pending as of that date, however, survived the automatic repeal. The 1985 legislation served to revive the Act and to enact it permanently.

5. The file now contains the Appeals Council's final decision, but not the ALJ's recommended decision referenced therein, nor the transcript of proceedings.

to act if that would be inappropriate. *Brown* at 885.

H. Rep. No. 99–120, Part I at 19–20, *reprinted in,* [1985] *U.S.Code Cong. & Ad. News* 132, 148;[6] *see also, Taylor v. Heckler,* 778 F.2d 674, 678 n. 4 (11th Cir.1985).

■ As plaintiff succinctly framed the issue in briefing, any other construction would "permit governmental agencies to err once, but always once." Thus, the Court concludes that it has authority to affirm the decision of the Secretary and judgment will be entered accordingly.[7]

That brings us to the merits of the instant motion. Plaintiff argues alternatively that: (1) application of the nonseverity regulation coupled with defendant's failure to apprise plaintiff of his membership in *Smith* rendered the government's position not substantially justified; and/or (2) improper balancing of expert testimony was likewise not substantially justified.

■ During the initial administrative proceedings, the ALJ's decision issued on December 27, 1983 and became the final decision of the Secretary upon affirmance by the Appeals Council on February 15, 1984. *Smith* was not decided until June 6, 1984. It is true that there were a smattering of published decisions containing veiled criticism of the non-severity rule prior thereto. *See, e.g., Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983), but the Court is unable to conclude that the Secretary was on fair notice that § 1520(c) was in serious trouble as of February 15, 1984 when the administrative decision became final. Accordingly, it cannot be said that reliance on the subject regulation was unreasonable.

■ Defendant's failure to timely advise plaintiff of his membership in *Smith* is unfortunate, but the worst that can be said is that his ultimate success was delayed for a period of a few months. The Court cannot conclude that this delay so infected the entire process as to render the overall position of the government unjustified.

Finally, there is the question of improper balancing. Standing as a formidable hurdle to plaintiff's position is *Albrecht v. Heckler,* 765 F.2d 914 (9th Cir.1985):

> When the ALJ is reversed for a failure to weigh conflicting medical evidence properly, an award of fees is inappropriate. *Id.* at 916.

It is argued by plaintiff that the legislative history developed in conjunction with

---

6. As a general rule, a *post facto* statement of congressional intent regarding previously-enacted legislation is not necessarily definitive. *Edwards v. Bowen,* 785 F.2d 1440, 1442 (9th Cir. 1986); *but see, Yamaguchi v. State Farm Mut. Auto. Ins. Co.,* 706 F.2d 940, 951 (9th Cir.1983); *Takazato v. Federal Maritime Comm'n,* 633 F.2d 1276, 1281 (9th Cir.1980). A distinguishing feature of the subject scenario, and one which perhaps takes it out of the general rule, is the fact that the 1985 legislation did not so much "amend" the EAJA, as it served to re-enact a then-defunct program. See note 4, *supra.* That observation would tend to lend considerable credence to the proposition that the legislative history accompanying such enactment accurately states both the lessons learned over the intervening years during which judicial pronouncements controlled the destiny of the EAJA, and also the lessons sought to be imparted for future application. See *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 1151–52, 84 L.Ed.2d 138 (1985).

It should be made abundantly clear that the Court would not be so presumptuous as to deem *Albrecht* wrongly decided. Rather, by virtue of Congress's clarification of intent, the *Albrecht* Court did not have before it the same statutory scheme as is present here.

7. Taking this step is not without its problems. Review of the Secretary's decision is limited to consideration of the record. With the exception of the Appeals Council's decision, there is no supplemental record. See note 5, *supra.* Thus, were anyone to challenge the Court's ability to conduct a meaningful review, it is abundantly clear that "review" is impossible on the present state of the record. However, since the government has had the opportunity to provide the full record, and indeed has been directed to do so, and has declined the opportunity, it is difficult to see how defendant could object to affirmance on such grounds. Plaintiff, of course, is actively arguing for affirmance. Any problem, therefore, lies in the realm of theoretical considerations and not the practical. Even if the government's position were to be adopted, however, and an order of dismissal were to be entered on the basis of mootness, it is noteworthy that at least one appellate court has considered such an order to be final for EAJA purposes. *Taylor, supra,* 778 F.2d at 676–78.

the 1985 Amendments nullifies the *Albrecht* rationale:

> Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified," the test must be more than mere reasonableness.
>
> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

*H.Rep. No.* 99–120, Part I at 9–10 (footnotes omitted), *reprinted in,* [1985] *U.S. Code Cong. & Ad.News* 132, 138.

■ Trial courts should tread lightly in concluding that circuit precedent is no longer good law. *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). This, however, is not a case such as *Hasbrouck* where the trial court attempted to resolve an inter-circuit conflict. Rather, this is a situation in which an intervening congressional pronouncement has displaced what prior hereto would unquestionably have been mandatory precedent.[8] This distinction would appear to be all the more pointed in view of the observation that prior to the 1985 Amendments, only the D.C. Circuit embraced the "more-than-mere-reasonableness" standard. *Grace v. Burger,* 763 F.2d 457, 458 (D.C. Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985). All other circuits which had addressed the issue opted for an analysis similar to that posited in *Albrecht.* See *United States v. Yoffe,* 775 F.2d 447, 449 (1st Cir.1985). Thus, Congress's specific and unambiguous language, coupled with its announced intention of "informing judicial construction of pre-1985 provisions,"[9] leaves very little room for any conclusion other than the one reached here; *viz.,* Congress intended to displace the judicial construction of the term "substantial justification" as defined by every circuit in the country save for the D.C.Circuit.

Is the end result now that whenever the Secretary loses, fee-shifting becomes automatic? No, but pretty close. As the government accurately notes in brief, the merits of a given case and the issue of awarding attorney fees are two discrete

---

8. While hesitant to interject yet another issue into the case, this may be an appropriate juncture to address an additional element of complexity. The Ninth Circuit has adopted the rule that an action is not "pending" for EAJA purposes when the only matter left unresolved is the attorney fees question. *Tongol v. Donovan,* 762 F.2d 727, 731–33 (9th Cir.1985). Was the instant action "pending" for any substantive purpose as of August 5, 1985, the effective date of P.L. 99–80? The answer must be in the affirmative as the Court still retained authority at that time to affirm, reverse or modify the Secretary's decision. See pages 805, 806, *supra.* Perhaps more to the point, there was nothing for the Court to act upon as of August 5, 1985 since the Secretary's decision was not at that time final. Thus, while *Tongol* is unquestionably binding on this Court, the rule of that decision finds no applicability to the facts at issue.

9. In a world where congressional equivocacy often renders a court's task in ascertaining legislative intent both thankless and uncertain, the subject House Report is the very epitome of straight-from-the-shoulder direction:

> To the extent that amendments made by this Act merely clarify the original Congressional intent in EAJA these amendments will have the effect of informing judicial construction of pre-1985 provisions of EAJA with respect to pending cases.

*H.Rep. No.* 99–120, Part I at 21, *reprinted in,* [1985] *U.S.Code Cong. & Ad.News* 132, 149; *see also, id.* at 11, *reprinted in,* [1985] *U.S.Code Cong. & Ad.News* at 139 (clarifying changes intended to be applied retroactively).

and independent inquiries and disposition of one does not necessarily resolve the other. Nonetheless, it is impossible to ignore or explain away the crystalline language chosen by the drafters of the House Report in proclaiming that if an administrative decision is not supported by substantial evidence, then it "is virtually certain not to have been substantially justified."[10]

In the final analysis, it is Congress which controls the purse-strings to the public fisc, and if Congress chooses on the one hand to enact *Gramm/Rudd/Hollings*, and on the other to open wide the floodgates to claims for attorney fees in social security cases, then the courts can only assume that Congress had its reasons. In the instant case, the ALJ's failure to present any analysis at all in rejecting Dr. Stevenson's conclusions ran afoul of long-settled precedent requiring specificity of findings. See note 2, *supra*. As such, the ALJ's decision was not supported by substantial evidence and the Secretary's affirmance thereof was not substantially justified.

The only remaining issues, then, are quantification of the fees to be approved, and the proportionate share to be borne by the claimant and the government. The instant motion is grounded on both 42 U.S.C. § 406(b)(1), which allows the Court to establish reasonable remuneration for work performed before it, and 28 U.S.C. § 2412(d). Counsel urges that he is entitled to the benefit of his contingency agreement with his client which provides for fees equaling 25% of the recovery, or a total of $6,629.25. As $3,000 has already been awarded pursuant to 42 U.S.C. § 406(a) for work performed at the administrative level, the amount sought is the remaining balance of $3,629.25.[11]

A court will not blindly give effect to a contingency agreement and this is particularly true in the context of a social security case. *MacDonald v. Weinberger*, 512 F.2d 144, 146–47 (9th Cir.1975). Rather, careful consideration must be given to the actual value of the attorney's services. *Id.* Also weighing as a factor is the policy of encouraging competent counsel to pursue such cases. *Id.* After a review of the file and particularly of submissions on behalf of plaintiff, and having in mind the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975),

---

**10.** This pronouncement of intent was most assuredly not unanimous. Several individual congressmen offered vehement objections. See *Russell v. National Mediation Bd.*, 775 F.2d 1284, 1285–88 (5th Cir.1985). The statement of an individual legislator which conflicts with the general intent of Congress as expressed in committee reports, however, will not generally be given a great deal of weight. *See, e.g., Garcia v. United States*, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984):

In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the committee reports on the bill, which "represent[ ] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969). We have eschewed reliance on the passing comments of one member, *Weinberger v. Rossi*, 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982), and casual statements from the floor debates. *United States v. O'Brien*, 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968); *Consumer Product Safety Comm'n v.*

*GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In *O'Brien, supra*, we stated that Committee Reports are "more authoritative" than comments from the floor, and we expressed a similar preference in *Zuber, supra*.

*Id.* 1055 S.Ct. at 483 (footnote omitted); *cf., Donovan v. Hotel, Motel & Restaurant Employees*, 700 F.2d 539, 544 n.7 (9th Cir.1983).

**11.** The necessity of bringing dual petitions for fees, one for administrative work and one for court work, results on occasion in procedural dilemmas which boggle the mind. See *Cartledge v. Heckler*, 615 F.Supp. 545 (N.D.Ill.1985) (section 406(b)(1) motion treated as motion to amend judgment under FRCP 59(e) and must be brought timely). An interesting and creative short-cut for counsel far-sighted enough to use it is found in *Donovan v. Secretary of Health and Human Services*, 598 F.Supp. 120 (D.Del.1984) (court may conditionally award fees under § 406(b)(1) even though amount due claimant not fully liquidated). Now that it is clear that a court can enter a final judgment under factual scenarios such as extant here, perhaps some of the procedural imponderables reflected in such decisional law will disappear.

*cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), the Court concludes that giving effect to the contingency agreement would be reasonable. Counsel has at all times presented a polished, aggressive and thoroughly professional approach. The result obtained was all that could be hoped for, and success was less than foreordained. Novel issues were raised and decided. Considering these factors, and having in mind the public interest in encouraging lawyers of high caliber to take on social security cases, the Court finds the sum of $3,629.25 to be reasonable compensation for the work performed before it.

Quantification of fees under the EAJA is somewhat more mathematical. While the Acts speaks in terms of "reasonable fees," the specific language employed tends to be constrictive:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour....

28 U.S.C. § 2412(d)(2)(A).

█ Counsel represents that his customary charge is $70 per hour and that he expended 43 hours on court work. The government has not contested the reasonableness of either the time spent or the hourly rate. Accordingly, the Court concludes that of the $3,629.25 found to constitute reasonable fees, $3,010 of that amount will be assessed against the government with the balance to be paid out of claimant's award.

An order in accord with this memorandum has been filed today.