Myrtis D. MARTIN, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. Civ. S–84–1704 MLS.

United States District Court,
E.D. California.

Sept. 9, 1987.

Ann Cerney, Law Offices of Ann Cerney, Stockton, Cal., for plaintiff.

David F. Levi, U.S. Atty., Evelyn M. Matteucci, Asst. U.S. Atty., Sacramento, Cal., for defendant.

## MEMORANDUM AND ORDER

MILTON L. SCHWARTZ, District Judge.

This matter is before the court on plaintiff's application for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b). Plaintiff seeks fees of $4,372.50 for 26.2 hours of legal services performed in the above-captioned matter.[1]

The application for fees under EAJA is based on the fact that plaintiff was the prevailing party in her suit against defendant to obtain social security benefits. Under EAJA, a successful party in a suit against the United States is entitled to attorney's fees and costs if the government's position is not substantially justified. 28 U.S.C. § 2412(d)(1)(A) (except for cases sounding in tort).

### I. PROCEDURAL BACKGROUND

Plaintiff's application for fees was heard by Magistrate Mix pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(b)(13). On September 19, 1986, in accordance with 28 U.S.C. § 636(b)(1)(C), she filed proposed findings and recommendations. She found that the reasoning in *Albrecht v. Heckler,* 765 F.2d 914 (9th Cir.1985), precluded an award of attorney's fees under EAJA. She therefore recommended that the application be denied.

On October 2, 1986, plaintiff filed objections to the magistrate's proposed findings and recommendations. Plaintiff contended that *Albrecht* is distinguishable from this case because in this case the Secretary "unlawfully" relied on plaintiff's driver's license in determining whether plaintiff

---

1. Plaintiff's counsel computed the fee at a rate of $75 per hour and then applied various "multipliers" to this base rate for her skill (a 20 percent multiplier), the contingent nature of the fee (100 percent multiplier), her experience, reputation and ability (20 percent multiplier) and the undesirability of the case (10 percent multiplier).

was categorically disabled (due to obesity) instead of relying on the records of plaintiff's treating physician. According to plaintiff, the issue in this case is one of law, not fact; therefore, because *Albrecht* dealt with whether the Secretary's position was substantially justified factually, *Albrecht* is not controlling.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 305, this court conducted a *de novo* review of the magistrate's findings and recommendations. In so doing, the court discovered that *Albrecht* had been decided prior to the effective date of the 1985 amendments to EAJA, *See* Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99-80, 99 Stat. 183 ("1985 Amendments"), and that the 1985 Amendments apply to this case.[2] The court noted that the legislative history to the 1985 Amendments suggests that Congress believes that courts have been misconstruing the term "substantially justified." See H.R.Rep. No. 99-120, 99th Cong., 1st Sess. 9-10, *reprinted in* 1985 U.S.Code Cong. & Ad.News 132, 138 ("House Report"). The court also noted that at least one district court has concluded that *Albrecht* is no longer good law in light of this legislative history. *See Derby v. Bowen,* 636 F.Supp. 803, 806-08 (E.D. Wash.1986).

Because neither party had addressed the issues raised by the legislative history to the 1985 Amendments and *Derby,* the court directed the parties to submit supplemental briefs. The parties have done so and the case has been resubmitted for decision. The following constitutes the court's decision on the issues raised by plaintiff's application.

## II. ANALYSIS

### A. *Background on Albrecht*

*Albrecht* was a social security case in which the Administrative Law Judge ("ALJ") was reversed for failing to identify clear and convincing reasons for rejecting the reports of plaintiff's treating physicians in denying plaintiff disability benefits. 765 F.2d at 915. As a result, the district court concluded that the ALJ's decision was not supported by substantial evidence. *Id.* at 916. The court denied, however, plaintiff's application for fees under EAJA, finding that the existence of *some* evidence supporting the Secretary's position precluded a finding that the Secretary's position was substantially unjustified. *Id.* The Ninth Circuit held that the district court did not abuse its discretion, noting that "[w]hen the ALJ is reversed for failure to weigh conflicting medical evidence properly, an award of fees is inappropriate." *Id.*

### B. *1985 Amendments to EAJA*

The House Report prepared in conjunction with the 1985 Amendments to EAJA says that agency action found to be unsupported by substantial evidence is "virtually certain" not to have been substantially justified under EAJA. House Report, at 9-10, 1985 U.S.Code Cong. & Ad.News at 138. The text of the relevant passage reads as follows:

Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.

Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an

---

**2.** The amendments apply to cases pending on August 5, 1985; this case was not decided until April 11, 1986 and was therefore pending on that date.

action to be found to be substantially justified under the Act.

The Committee expects that the determination of what is "substantially justified" will be decided on a case-by-case basis due to the wide variety of factual contexts and legal issues which make up government disputes.

*Id.* This language caused the district court in *Derby* to conclude that Congress intended to displace the prior judicial construction of the term "substantially justified." 636 F.Supp. at 807; *accord, Oliveira v. Bowen,* 664 F.Supp. 1320 (N.D.Cal.1986) (Western District Court database). The *Derby* court also acknowledged that such an interpretation of substantial justification moves EAJA "pretty close" to being an automatic fee-shifting statute whenever the Secretary loses. *Id.; but see Oliveira,* 664 F.Supp. at 1322 (it does not necessarily follow that cases not supported by substantial evidence are not substantially justified).

In reaching this conclusion, the *Derby* court noted that the House Report's pronouncement of intent "was most assuredly not unanimous," referring to the "vehement objections" of "several individual congressmen." *Id.* at 808 n. 10. The court concluded, however, that the remarks of individual legislators which conflict with the general intent of Congress as expressed in committee reports will not generally be given a great deal of weight. *Id.* (citing to and quoting *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), *reh'g denied,* 469 U.S. 1230, 105 S.Ct. 1235, 84 L.Ed.2d 371 (1985)).

### C.  *Status of the House Report*

The Supreme Court in *Garcia* did hold that the authoritative source of legislative intent lies in the committee reports on a bill, which represent the collective understanding of those congressmembers involved in drafting and studying the proposed legislation. 105 S.Ct. at 483. The Court also noted that it has traditionally eschewed reliance on "the passing comments of one member" and "casual statements from the floor debates." *Id.* Consistent with this, the Court concluded that committee reports are "more authoritative" than comments from the floor. *Id.* (citing *United States v. O'Brien,* 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672, *reh'g denied,* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968), and *Zuber v. Allen,* 396 U.S. 168, 187, 90 S.Ct. 314, 325, 24 L.Ed.2d 345 (1969)); *see also Donovan v. Hotel, Motel and Restaurant Employees and Bartenders' Union, Local 19,* 700 F.2d 539, 544 n. 7 (9th Cir.1983) (also citing *Zuber*).

The difficulty in applying the rules enunciated in *Garcia* to this case is that the 1985 Congress was not involved in drafting and studying the term "substantially justified" as used in section 2412 of EAJA. Moreover, to the extent that these congressmembers did "study" EAJA in the process of reenacting it, they chose to leave the language virtually the same as it was enacted in 1980.[3] This is so even though the stated purpose of the 1985 Amendments was to make "clarifying technical and substantive amendments" to EAJA and to make EAJA, as amended, permanent. *See* House Report, at 1, 1985 U.S. Code Cong. & Ad.News at 132.[4]

The Supreme Court has held that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980). Of course, subsequent *legislation* declaring the intent of an earlier statute is entitled to great weight in statutory construction, *id.* at 118 n. 18 (citing *Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)), because Congress

---

**3.** Congress did add the phrase "including proceedings for judicial review of an action" to section 2412(d)(1)(A), which expands the scope of agency conduct subject to review for substantial justification but does not define what "substantially justified" means.

**4.** In reality the process of "reenacting" EAJA involved deleting the sunset clause in the original statute.

has proceeded formally through the legislative process.[5] *Id.* A mere statement as to what a committee believes an earlier statute meant is "obviously less weighty." *Id.*; *see also Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982) ("such *post hoc* statements of a Congressional committee are not entitled to much weight."). Thus, even when it would be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment. 447 U.S. at 117, 100 S.Ct. at 2060.

With respect to the meaning of the term "substantially justified," the Ninth Circuit has repeatedly held that it means "reasonable." *See, e.g., Minor v. United States,* 797 F.2d 738, 739 (9th Cir.1986); *Petition of Hill,* 775 F.2d 1037, 1042 (9th Cir.1985); *Albrecht v. Heckler,* 765 F.2d at 915; *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1106 (9th Cir.1983); *Foster v. Tourtellotte,* 704 F.2d 1109, 1112 (9th Cir.1983). Interestingly, the most recent case on this issue—*Minor*—was decided after the 1985 Amendments (the decision on the merits was issued on October 3, 1985, *see* 772 F.2d 1472 (9th Cir.1985)) but nonetheless referred to the 1980 legislative history:

> The EAJA was intended to facilitate the efforts of private parties to vindicate

their rights when confronted with arbitrary actions by representatives of the government, without at the same time discouraging the type of vigorous advocacy on the part of government counsel which Congress felt was essential to the enforcement of federal law. Accordingly, Congress established a standard of substantial justification for determining whether the government should be held liable for its opponents attorneys' fees when it loses a case. As the House Committee Report on the EAJA makes clear, this standard is "essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made." H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. at 10 ([1980]) 5 U.S.Code Cong. & Ad.News 4953, 4984, 4989.

797 F.2d at 739. This passage suggests that the Ninth Circuit harbors no doubt regarding the meaning of the term "substantially justified" or the legislative intent concerning the meaning of that term as it is used in the original Act.[6] *Cf. Morgan Guaranty Trust Co. of New York v. American Savings and Loan Ass'n,* 804 F.2d 1487, 1492 (9th Cir.1986) (subsequent legislative history not conclusive as to meaning of previously enacted statutes; courts are, however, entitled to give it weight when the meaning of statute and

---

**5.** This is what the court construes the intent underlying the following passage of the House Report to be: an attempt to clarify, by *amendment,* the intent of the original Congress which enacted EAJA.

> To the extent that *amendments made by this Act* merely clarify the original Congressional intent in EAJA *these amendments* will have the effect of informing judicial construction of pre–1985 provisions of EAJA with respect to pending cases.

House Report, at 21, 1985 U.S.Code Cong. & Ad.News at 149 (emphasis added), *cited in Derby,* 636 F.2d at 807 n. 9.

**6.** In *Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985), the Fifth Circuit re-examined its prior holdings concerning the meaning of the phrase "substantially justified" in light of the legislative history to the 1985 Act. After examining both the House Report and the various statements from the floor, it concluded:

> This legislative history is puzzling. The unchallenged portion of the House Report indi-

cates that government action must be more than merely reasonable to be substantially justified. The co-sponsors' comments during the floor debates, by contrast, indicate that an action may be substantially justified even though it is arbitrary and capricious. We see no way to harmonize these positions. *Cf. Spencer [v. National Labor Relations Board],* 712 F.2d [539] 552 & n. 47 [DCCir.1983] (noting that "a court that has just concluded that the agency's action was 'arbitrary and capricious' would be hard pressed to rule that its action was nevertheless 'substantially justified' "). Finding the legislative history conflicting and inconclusive, we adhere to our position in *KKK [v. East Baton Rouge Parish School Board,* 679 F.2d 64, 68 (5th Cir.1982),] that the standard is one of reasonableness. *Id.* at 1289; *but see Riddle v. Secretary of Health and Human Services,* 817 F.2d 1238, 1240–44 (6th Cir.) (rejecting "reasonableness" standard in light of 1985 legislative history), *vacated and rehearing granted,* 823 F.2d 164 (6th Cir.1987).

original legislative intent are in doubt), *cert. denied,* —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

Furthermore, committee reports are only useful to the extent that they *fairly* reflect congressional intent. *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1570 n. 13 (D.C.Cir.1984) (quoting *Jordan v. United States Department of Justice,* 591 F.2d 753, 767 (D.C.Cir.1978) (en banc), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985)). Erroneous statements of legislative intent in committee reports are more likely to draw refutation than statements made on the floor or statements inserted into the congressional record, *Donovan,* 700 F.2d at 544 n. 7; if this is the reason that statements in committee reports are presumed to be reliable indicia of such intent, it would seem improper to ignore such refutation when evaluating the import of language in a committee report.

Moreover, the "vehement" objections of several individual congressmembers referred to by the court in *Derby* are more than the "passing comments of one member" or "casual statements from floor debates." *Cf. Garcia,* 105 S.Ct. at 483. The comments were made by the *co-sponsors* of the 1985 amendments, as the District of Columbia Court of Appeals noted in *Federal Election Commission v. Rose:*

> On the floor of Congress, both Senate and certain House sponsors of the EAJA Amendments expressly repudiated this apparently staff-produced bit of "history." For example, Senator Grassley, co-sponsor of the Senate companion bill to H.R. 2378, responded as follows when asked whether the House Report passage quoted above correctly reflected Congress' intent:
>
> > I want to make it clear that the EAJA case over the fees issue is a separate and distinct inquiry. Just because an agency loses on the merits of the case doesn't mean that it is automatically going to be liable for a fee award. The EAJA does not provide for automatic fee shifting.
>
> 131 Cong.Rec. S9993 (daily ed. July 24, 1985). Senator Thurmond, Chairman of

the Senate Judiciary Committee, echoed these remarks. *See id.* So, too, did members of the House.

> Two Members of the House specifically rejected the passage of the House Report quoted in the text. Their criticism focused on the implication in this passage that a finding that agency action was not supported by "substantial evidence" inevitably led to finding the action not "substantially justified." Representative Kindness of the House Judiciary Committee, a cosponsor of the bill that was ultimately enacted as the EAJA Amendments, condemned the Report's discussion of the "substantially justified" standard as "mislead[ing]" and as "gratuitously authoritarian." *See* 131 Cong. Rec. H4763 (daily ed. June 24, 1985) (statement of Rep. Kindness); Representative Moorhead, another cosponsor, concurred in this repudiation. *See id.* And Representative Kastenmeier likewise agreed that "[s]ubstantial justification is a different standard than the substantial evidence standard." *Id.* In the face of this onslaught, no voice was raised in defense of the Report's interpretation.

806 F.2d 1081, 1090 (D.C.Cir.1986) (referring to the House Report as an "uninformed *ipse dixit*" and "spurious legislative history"). The law in the Ninth Circuit is that comments of legislators who participate in the drafting of legislation (in this case the 1985 Amendments) are entitled to some weight. *See American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981).

As the district court observed in *Derby,* trial courts should tread lightly in concluding that circuit precedent is no longer good law. 636 F.Supp. at 807 (citing *Hasbrouk v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982)); *see also Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987) (district courts bound by law of their circuit). The legislative history to the 1985 Amendments to EAJA is sufficiently inconclusive to persuade this court that the interpretation of the term "substantially justified" proposed

by the House Report is not necessarily the view held by those congressmembers responsible for the passage of the 1985 Amendments. *See Rose*, 806 F.2d at 1090 (condemning the "well-recognized phenomenon of deliberate manipulation of legislative history at the committee level to achieve what likely cannot be won before Congress as a whole"). Because of this, there is no basis for concluding that the 1985 Amendments—which did not even address the term "substantially justified"—have in any way changed or amplified the standard for substantial justification as established by EAJA as originally enacted in 1980 and as interpreted by the Ninth Circuit in *Albrecht*. The court therefore concludes that *Albrecht* is still good law and must be applied in this case.

### D. *Application of Albrecht*

■ Plaintiff contends in her objections to the magistrate's proposed findings and recommendations that this case differs from *Albrecht* inasmuch as this case involves a failure to *consider* certain evidence. (Emphasis plaintiff's.) Plaintiff explains that:

> In *Albrecht*, the District Court dwelt on the issue of whether there was "substantial justification" in fact. In *Martin*, the issue is whether there is substantial justification in law. By law, plaintiff was categorically disabled because her weight was above that required by Appendix 1, [Subpart P of 20 C.F.R. Pt. 404] if the Administrative Law Judge chose to rely on the plaintiff's treating physician's records. By law, plaintiff was not categorically disabled if the Administrative Law Judge chose to rely on the plaintiff's driver's license. The central legal issue herein is that the Administrative Law Judge never gave any reason at all for his finding on the issue of categorical disability. Having failed to do this, there is simply no "substantial justification" for the Secretary's position that plaintiff was not disabled.

Defendant labels plaintiff's position "sophistic" and contends that under plaintiff's logic, courts would be compelled to award EAJA fees in every disability case in which plaintiff prevails.

The court notes that the distinction between questions of law and questions of fact is an elusive one.[7] However, the issue in this case was whether plaintiff is "categorically disabled" in light of the standards set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. To make this determination, the ALJ had to evaluate certain factual materials, including evidence on plaintiff's weight and height. This evidence was conflicting: plaintiff's driver's license listed her weight and height at one level (as did the report of a consulting physician) and plaintiff's treating physician listed her weight and height as being at another level. Plaintiff apparently testified to the accuracy of the driver's license listing at the hearing before the ALJ. The ALJ relied upon the driver's license in determining that plaintiff did not meet the requirements for being categorically disabled.

In recommending that the matter be remanded for further findings, the magistrate found that the ALJ erred when he relied on plaintiff's driver's license instead of the records of her treating physician in determining her height and weight. The magistrate also found that the ALJ failed to consider whether the evidence of high blood pressure and degenerative arthritis, in combination with obesity, qualifies plaintiff as disabled.

Thus, the issue was the ALJ's evaluation of the "factual" evidence before him, even though the "law" requires that his determination be overturned if it is not supported by substantial evidence and if he disregards evidence which the "law" requires that he consider. Even if, under the legal standards which define categorical disability, plaintiff was disabled, the error was one of fact, not law. The ALJ did not misinterpret the legal standard for categorical disability; instead he mis-assessed the facts

---

7. For a discussion of this issue in other contexts, see Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of* *Material Fact*, 99 F.R.D. 465, 469–80 (1984); Weiner, *The Civil Jury Trial and the Law-Fact Distinction*, 54 Cal.L.Rev. 1867, 1868–72 (1966).

as to whether plaintiff qualified as categorically disabled.

In this respect, this case involves a very similar situation to that at issue in *Albrecht:* the ALJ's rejection of treating physicians' recommendations without complying with his "legal" obligation to state clear and convincing reasons for doing so. *See* 765 F.2d at 916. Even when this occurs, *Albrecht* indicates that the existence of "some evidence" supporting the government's position precludes a finding that its position was not substantially justified. *See id.*

In this case, there was "some evidence" supporting the government's position, even though that evidence was skimpy. Because of this, *Albrecht* precludes an award of fees under EAJA.

### E. *Amount of Fees Requested*

Since the court has concluded that it cannot award fees under EAJA as a result of binding Ninth Circuit precedent, it need not address the question of whether the amount of fees sought by plaintiff is appropriate. The court notes, however, that the use of the kind of multipliers proposed by plaintiff is extremely questionable. *See LaDuke v. Nelson*, 796 F.2d 309, 310 (9th Cir.1986) ("vacating the district court's use of" a multiplier and remanding the issue of the propriety of a multiplier to the district court for consideration in light of the recent Supreme Court decisions in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Library of Congress v. Shaw*, —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)); *see also Pennsylvania v. Delaware Citizens' Council for Clean Air*, —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (follow-up to earlier decision).

### III. CONCLUSION

Accordingly, IT IS ORDERED that:

1. The Proposed Findings and Recommendations of the magistrate, filed September 19, 1986, are adopted in full; and

2. Plaintiff's application for attorney's fees under EAJA is denied.